**CORRECTED COPY**

# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
CONN, HOFFMAN and GIFFORD
Appellate Military Judges

**UNITED STATES, Appellee\***
**v.**
**Sergeant INEZ T. MARTINEZ, JR.**
**United States Army, Appellant\*\***

ARMY 20080699

Headquarters, Fort Carson
Debra Boudreau, Military Judge (arraignment)
Thomas Molloy, Military Judge (trial)
Colonel Michael W. Meier, Staff Judge Advocate

For Appellant:  Captain Brent A. Goodwin, JA (argued); Colonel Mark Tellitocci, JA; Lieutenant Colonel Matthew M. Miller, JA; Major Bradley M. Voorhees, JA; Captain Brent A. Goodwin, JA (on brief); Colonel Mark Tellitocci, JA; Major Bradley M. Voorhees, JA; Captain Brent A. Goodwin, JA (on brief regarding specified issues).

For Appellee:  Major Adam S. Kazin, JA (argued); Colonel Norman F. J. Allen III, Colonel, JA; Lieutenant Colonel Martha C. Foss, JA; Lieutenant Colonel Francis C. Kiley, JA; Major Karen J. Borgerding, JA (on brief); Colonel Norman F. J. Allen III, Colonel, JA; Lieutenant Colonel Martha C. Foss, JA; Major Adam S. Kazin, JA; Major Karen J. Borgerding, JA (on brief regarding specified issues).

7 October 2010

---------------------------------
OPINION OF THE COURT
---------------------------------

GIFFORD, Judge:

Appellant was charged with absence without leave and drunk on duty, in violation of Articles 86 and 112, Uniform Code of Military Justice (10 U.S.C. §§ 886 and 912) [hereinafter UCMJ].  A military judge, sitting as special court-martial convicted appellant, pursuant to his pleas, of absence without leave for more than thirty days and drunk on station, in violation of Articles 86 and 134, UCMJ, 10 U.S.C. §§ 886 and 934.  The military judge sentenced appellant to a bad-conduct discharge, confinement for six months and reduction to the grade of Private E1.  For the Specification of Charge II, the convening authority disapproved the finding of

\*Corrected
\*\*Corrected

MARTINEZ – ARMY 20080699

drunk on station, in violation of Article 134, UCMJ (10 U.S.C. § 934) and instead approved a finding of incapacitation for duty through the prior wrongful indulgence of alcohol [hereinafter "incapacitation for duty by reason of drunkenness"], in violation of Article 134, UCMJ, 10 U.S.C. § 934. The convening authority limited confinement to 164 days and otherwise approved the adjudged sentence.

In review before this court pursuant to Article 66(c), UCMJ, appellant raises two assignments of error, to-wit:

I.

WHETHER A REASONABLE PERSON WOULD QUESTION THE TRIAL JUDGE'S IMPARTIALITY WHEN A SENIOR MILITARY JUDGE, WHO APPEARED TO HAVE ASSISTED THE GOVERNMENT DURING TRIAL, ENTERED THE TRIAL JUDGE'S CHAMBERS DURING RECESS AND DELIBERATIONS, IN VIOLATION OF APPELLANT'S RIGHT TO DUE PROCESS.

II.

THE OMISSSION OF ANY REFERENCE TO THE SENIOR MILTARY JUDGE WHO APPEARED TO HAVE ASSISTED THE GOVERNMENT DURING TRIAL AND ENTERED THE TRIAL JUDGE'S CHAMBERS DURING RECESSES AND DELIBERATIONS MADE [THE] RECORD OF TRIAL SUBSTANTIALLY INCOMPLETE IN CONTRAVENTION OF [ARTICLE] 54(c), UCMJ, AND RULE FOR COURTS-MARTIAL 1103(b)(2)(B), AND WAS A SUBSTANTIAL ERROR.

For appellant's first assignment of error we assume, without deciding, that the military judge committed plain error when he did not disqualify himself or obtain waiver, under the provisions of Rule for Courts-Martial [hereinafter R.C.M.] 902(a), based on his knowledge of the supervisory judge's contact with the trial counsel regarding a request for recess *in tandem with* other facts of the case. We further find, however, after review of this case under the factors set forth in *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988), reversal of the findings is not warranted. We additionally find, upon review of the entire record, that appellant's second assignment of error is without merit. Article 59(a), UCMJ.

Although not raised by appellant, we also find that the convening authority exceeded his authority under Article 60(c), UCMJ, and R.C.M. 1107(c), when he

approved incapacitation for duty by reason of drunkenness for the Specification of Charge II.  We grant relief in our decretal paragraph.  We affirm the remaining findings and the sentence as reassessed.  We briefly address this error and appellant's first assignment of error, although do so in reverse order.

## I.  IMPROPER CONVENING AUTHORITY ACTION

*Background*

In the Specification of Charge II, appellant was charged with being drunk on duty.  Article 112, UCMJ.  *See also Manual for Courts-Martial, United States* (2008 ed.). [hereinafter *MCM*], Part IV, para. 36a.  Prior to trial, appellant entered into a pretrial agreement wherein he agreed, in exchange for a limitation on sentence, to plead guilty to "drunk on duty" to the Specification of Charge II.

At trial, for the specification of Charge II and Charge II, appellant entered a plea of guilty to "the named lesser-included offense of drunk on station" in violation of Article 134.  The offense of drunk on station is listed in *MCM,* Part IV, para. 73.  Neither the trial counsel nor the defense counsel objected to or commented upon appellant's plea to drunk on station.  Prior to appellant's entry of pleas, the military judge commented on the record that the parties had discussed, at a R.C.M. 802 session, that appellant was changing his plea of guilty from Article 112 to Article 134 and "the [his] form of plea to the lesser-included offense."  The record does not detail whether the R.C.M. 802 session specified which Article 134 offense appellant was pleading to, nor the form appellant's plea would take.  In noting corrections to the stipulation of fact, however, the military judge stated the words "drunk on duty" were amended to read "drunk on station."

After entry of pleas, the military judge acknowledged that appellant had "entered a plea of guilty to the crime of drunk on station."  The military judge advised appellant, however, of the elements of a third offense:  incapacitation for duty through the prior wrongful indulgence of alcohol.  Article 134, UCMJ; *MCM,* Part IV, para. 76.  During the ensuing providence inquiry, the colloquy between the military judge and appellant established appellant satisfied the elements for the offense of incapacitation for duty through the prior wrongful indulgence of alcohol.  During the providence inquiry, the trial counsel twice asked the military judge to obtain additional information from appellant to ensure that a sufficient factual inquiry had been obtained to satisfy elements of the offense of incapacitation for duty by reason of drunkenness—*i.e.*, that appellant had been subject to the requirement to perform duties as an infantryman (MOS 11B) non-commissioned officer and that his conduct was prejudicial to good order and discipline in the Armed Forces or was of a nature to bring discredit upon the Armed Forces.  When the military judge entered findings, however, he found appellant guilty of the offense to which he pled guilty—drunk on station.

In his written post-trial recommendation [hereinafter "PTR"] to the convening authority pursuant to R.C.M. 1106, for the Specification of Charge II, the staff judge advocate [hereinafter SJA] recommended the convening authority approve a finding of guilty for the Article 134, UCMJ, offense of incapacitation for duty through prior wrongful indulgence of alcohol.  In responding to the SJA's PTR, neither appellant nor his trial defense counsel commented on the SJA's recommendation to the convening authority to approve the Article 134 offense of incapacitation for duty through drunkenness instead of drunk on station.  In taking action pursuant to Article 60(c) and R.C.M. 1107(c), the convening authority approved a finding of guilty of incapacitation for duty through drunkenness, in accordance with the SJA's recommendation.

*Discussion*

Because the Article 134, UCMJ, offense of incapacitation for duty by reason of drunkenness is not a lesser-included offense of the Article 134, UCMJ, offense of drunk on station, we find the convening authority exceeded his authority under Article 60(c), UCMJ, and R.C.M. 1107(c).  As a result, his approval of the Specification of Charge II is a nullity.

A convening authority is not required to specifically act on the findings of a court-martial.  Article 60(c), UCMJ, and R.C.M. 1107(c).  *See also United States v. Alexander*, 63 M.J. 269 (C.A.A.F. 2006); *United States v. Diaz*, 40 M.J. 335 (C.M.A. 1994).  If he chooses to act on the findings of a court-martial, however, a convening authority is limited to the options delineated in Article 60(c), UCMJ, and R.C.M. 1107(c).  *Diaz*, 40 M.J. at 341.

Pertinent to the case *sub judice*, both Article 60(c)(3)(B) and R.C.M. 1107(c)(1) contain identical language regarding a convening authority's discretion.  As this court stated in *United States v. Henderson*, Article 60(c) authorizes a convening authority "to modify any adjudged finding of guilty by setting aside the finding of guilty and dismissing the related charge or specification or by approving a lesser-included offense of the adjudged finding of guilty."  56 M.J. 911 at 912 (Army Ct. Crim. App. 2002).  Specifically, the language of Article 60(c) and R.C.M. 1107(c) authorizes a convening authority to "change a finding of guilty to a charge or specification to a finding of guilty to an offense *that is a lesser-included offense of the offense stated in the charge or specification*" (emphasis added).[1]

---

[1] The full texts of Article 60(c) and R.C.M. 1107(c) are set forth below.

(continued . . .)

MARTINEZ – ARMY 20080699

To determine whether an offense is a lesser included offense of a charged offense, we apply the "elements test" derived from *Schmuck v. United States*, 489 U.S. 705 (1989). If the elements of one offense are a subset of the charged offense, the offense would be a lesser-included offense of the charged offense. *Id.* at 716. Applying the *Schmuck* elemental analysis to the instant case, we find the offense of incapacitation for duty by reason of drunkenness in violation of Article 134, UCMJ,

---

(. . . continued)

Article 60(c)(3) states:

> (c) Action on the findings of a court-martial by the convening authority or other person acting on the sentence is not required. However, such person, in his sole discretion, may—
>
> > (A) dismiss any charge or specification by setting aside a finding of guilty hereto; or
> > (B) change a finding of guilty to a charge or specification to a finding of guilty to an offense *that is a lesser-included offense of the offense stated in the charge or specification*.

(emphasis added).

Rule for Courts-Martial 1107(c) states:

> (c) *Action on findings.* Action on the findings is not required. However, the convening authority may, in the convening authority's sole discretion:
>
> > (1) Change a finding of guilty to a charge or specification to a finding of guilty to an offense *that is a lesser-included offense of the offense stated in the charge or specification*; or
> >
> > (2) Set aside any finding of guilty and—
> >
> > > (A) Dismiss the specification and, if appropriate, the charge, or
> > >
> > > (B) Direct a rehearing in accordance with subsection (e) of this rule.

(emphasis added).

MARTINEZ – ARMY 20080699

is not a lesser-included offense of drunk on station in violation of Article 134, UCMJ.

The offense of drunk on station under Article 134, UCMJ, requires the government establish two elements:

> (1) That the accused was drunk, disorderly, or drunk and disorderly on board ship or in some other place; and
>
> (2) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

*MCM,* Part IV, para. 73.

The offense of incapacitation for duty by reason of drunkenness under Article 134, UCMJ, requires the government establish four elements:

> (1) That the accused had certain duties to perform;
>
> (2) That the accused was incapacitated for the proper performance of such duties;
>
> (3) That such incapacitation was the result of previous wrongful indulgence in intoxicating liquor or any drug; and
>
> (4) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

*MCM,* Part IV, para. 76.

Restatement of the elements of each offense clearly reflects that the two offenses share only one element in common:  that, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces. Restatement of the elements similarly clearly reflects that the two offenses do not share in common the two elements set forth in incapacitation for duty by reason of drunkenness:  that one had duties to perform and was incapacitated to perform such duties through the prior wrongful indulgence of intoxicating liquor or alcohol.  Both of these elements are patently not elements of the offense of drunk on station. Accordingly, under the *Schmuck* elemental analysis, those two elements clearly

establish that incapacitation for duty by reason of drunkenness under *MCM*, Part IV, para. 76, is not a lesser included offense of drunk on station under *MCM*, Part IV, para. 73. Based on our conclusion above, we need not address whether the elements of "drunkenness" under *MCM*, Part IV, Article 73, and "incapacitation" under *MCM*, Part IV, para. 76, are the same for the purpose of the *Schmuck* elemental analysis. *Cf. United States v. Gonzalez*, 60 M.J. 572, 578-79 (Army Ct. Crim. App. 2004).

Because incapacitation for duty by reason of drunkenness is not a lesser-included offense of drunk on station, the convening authority exceeded the scope of his authority under Article 60(c)(3)(B) and R.C.M. 1107(c)(1). The convening authority's action with regard to the Specification of Charge II is a nullity and we take appropriate action in our decretal paragraph.

## II. APPELLATE CHALLENGE TO MILITARY JUDGE'S IMPARTIALITY

*Background*

Appellant was arraigned by Colonel (COL) B and tried by COL M. Appellant was advised at the time of arraignment that COL M would likely be trying his case. The record of trial reflects that although he was an experienced judge advocate, appellant's court-martial was COL M's first court-martial as a military trial judge. Colonel B [hereinafter "supervisory judge"] provided oversight of COL M [hereinafter "military judge"] during appellant's court-martial.

After appellant's trial, his trial defense counsel submitted clemency matters to the convening authority pursuant to R.C.M. 1105. In a memorandum to the convening authority, the trial defense counsel asserted that the supervisory judge's contact with the trial counsel during appellant's court-martial was "unusual" and created a perception by appellant that the supervisory judge was "assisting the prosecution." The trial defense counsel asserted, *inter alia*, that the supervisory judge had "unusual" contact with the trial counsel at least twice during appellant's trial while she was sitting in the spectator section of the courtroom. The trial defense counsel further stated that as a result of one communication, the trial counsel requested a recess and the supervisory judge followed the military judge into his chambers during the recess. The trial defense counsel noted the supervisory judge also accompanied the military judge into his chambers during deliberations. The trial defense counsel expressly acknowledged he observed the supervisory judge's action at trial, but did not take action at that time. The trial defense counsel stated that the actions of the supervisory judge left appellant with an honest belief that the trial judiciary was less than impartial towards him.

The SJA's addendum included a sworn affidavit from the trial counsel. In the affidavit, the trial counsel acknowledged twice interacting with the supervisory judge while appellant's court-martial was in session and the supervisory judge was in

the spectator section. On one occasion, the supervisory judge passed the trial counsel a note informing him that the military judge had failed to elicit facts during the providence inquiry addressing two elements in the Specification of Charge II. The trial counsel stated that he had already noted the omission, thus the supervisory judge did not inform him of something of which he was not aware. The trial counsel further stated the supervisory judge verbally asked him to seek a recess—which he did—after which the supervisory judge accompanied the military judge into his chambers. The trial counsel stated that after a short recess, the military judge returned and proceeded to ask further questions about appellant's pretrial agreement. The trial counsel's affidavit also confirmed that the supervisory judge accompanied the military judge into his chambers at deliberations.

In a sworn affidavit obtained pursuant to this court's order, the supervisory judge identified her role in appellant's case, explained her supervisory relationship with the military judge, why she and the military judge shared judicial chambers, and emphasized the non-substantive nature of their conversations regarding appellant's case. The supervisory judge recalled communicating with the trial counsel while appellant's court-martial was in session by passing a note to the trial counsel. The supervisory judge stated she did so to request a recess after the military judge failed to address most of the provisions of appellant's pretrial agreement and the supervisory judge had been unsuccessful in being able to gain the military judge's attention. The supervisory judge further stated that when the court recessed, she informed the defense counsel that she had asked the trial counsel to request the recess. The supervisory judge acknowledged accompanying the military judge into his chambers after requesting the recess and advising him of the omissions in addressing all the terms of the pretrial agreement. She emphasized that at no time did she and the military judge discuss any substantive issues regarding appellant's case. The supervisory judge stated she does not recall any communications with the trial counsel about the elements.

In a sworn affidavit also obtained pursuant to this court's order, the military judge identified his role in appellant's case, explained the supervisory judge's supervisory relationship with him, explained why he and the supervisory judge shared the singular judicial chambers, and emphasized the non-substantive nature of their conversations regarding appellant's case. The military judge's statement reflected he became aware of the supervisory judge's request for a recess made via the trial counsel, although it does not reflect he was aware of the precise mode of communication. The military judge made no mention of knowledge of any other contact between the supervisory judge and the trial counsel while appellant's court-martial was in session. The military judge noted that after the trial counsel requested a recess, the supervisory judge accompanied him into his chambers. The supervisory judge advised him of the omissions in addressing many of the terms of the pretrial agreement. The military judge emphasized that at no time did he and the supervisory judge discuss any substantive issues regarding appellant's case.

Review of the record of trial reflects that after conducting his factual inquiry during the providence inquiry on the Specification of Charge I, the military judge asked both counsel whether they thought any further inquiry was needed. The trial counsel requested the military judge make further inquiry of appellant on the elements mentioned in the trial counsel's affidavit.

The record further reflects that when conducting his inquiry to determine whether appellant understood the terms of his pretrial agreement, the military judge initially only addressed a portion of the pretrial agreement with the appellant before concluding the inquiry. Shortly after the military judge appeared to have concluded his inquiry of the pretrial agreement and proceed to other portions of the guilty plea inquiry, the trial counsel requested a recess. After the trial resumed, the military judge resumed his inquiry into terms of the pretrial agreement and addressed terms of appellant's pretrial agreement not previously discussed.

*Discussion*

Appellant did not challenge the military judge's participation at trial. When an appellant does not raise the issue of disqualification until appeal, we examine the claim under the plain error standard of review. *United States v. Jones*, 55 M.J. 317, 320 (C.A.A.F. 2001) (citations omitted).

Appellant avers that a "reasonable person" would question the impartiality of a military judge who would allow an individual (*i.e.*, the supervisory judge) who appeared to be "assisting the prosecution" (*i.e.*, her contact with the trial counsel during the court-martial) to accompany him into his chambers during recesses and deliberations. As a result, appellant asserts the military judge should have recused himself under the provisions of R.C.M. 902(a). The facts of the instant case are somewhat novel, insofar as we examine the conduct of two judges to determine whether one military judge should have disqualified himself under R.C.M. 902(a), although we do not do so under a theory of imputation. *Cf. Jones*, 55 M.J. at 319-20 and *United States v. Lynn*, 54 M.J. 202 (C.A.A.F. 2000).

Rule for Courts-Martial 902 delineates general and specific bases for judicial disqualification. Whereas R.C.M. 902(b) establishes several specific bases for disqualification, R.C.M. 902(a) establishes a general basis for disqualification on the appearance of bias.[2] Specifically, R.C.M. 902(a) provides, "Except as provided in

---

[2] Appellant does not assert, and there is no evidence in the record of trial to warrant, that the military judge should have disqualified himself for any of the five bases listed under R.C.M. 902(b). The full text of R.C.M. 902(b) is set forth below:

(continued . . . )

subsection [902] (e) of this rule, a military judge shall disqualify himself or herself in any proceeding in which that military judge's impartiality might reasonably be questioned."

In interpreting R.C.M. 902(a), our superior court articulated the following standard: "[a]ny conduct that would lead a reasonable man knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned is a basis for the judge's disqualification." *United States v. Quintanilla*,

---

(. . . continued)

    (b) *Specific grounds.* A military judge shall also disqualify himself or herself in the following circumstances:

        (1) Where the military judge has a personal bias or prejudice concerning a party or personal knowledge of disputed evidentiary facts concerning the proceeding.

        (2) Where the military judge has acted as counsel, investigating officer, legal officer, staff judge advocate, or convening authority as to any offense charged or in the same case generally.

        (3) Where the military judge has been or will be a witness in the same case, is the accuser, has forwarded charges in the case with a personal recommendations to disposition, or except in the performance of duties as military judge in a previous trial of the same or a related case, has expressed an opinion concerning the guilt or innocence of the accused.

        (4) Where the military judge is not eligible to act because the military judge is not qualified under R.C.M. 502(c) or not detailed under R.C.M. 503(b).

        (5) Where the military judge, the military judge's spouse, or a person within the third degree of relationship to either of them or a spouse of such person:

            (A) Is a party to the proceeding;

            (B) Is known by the military judge to have an interest, financial or otherwise, that could be substantially affected by the outcome of the proceeding; or

            (C) Is to the military judge's knowledge likely to be a material witness in the proceeding.

56 M.J. 37, 78 (C.A.A.F. 2001) (quoting *United States v. Kincheloe*, 14 M.J. 40, 50 (C.M.A. 1982) (interpreting 28 U.S.C. § 455(a))). The test is objective, judged from a reasonable person viewing the proceedings.[3] *Quintanilla*, 56 M.J. at 78. A key point of the standard is knowledge of all the facts. *See e.g., United States v. Lynn*, 54 M.J. at 205; *United States v. Mitchell*, 39 M.J. 131, 143 (C.M.A. 1994).

We have carefully examined the record of trial, which includes sworn affidavits from the supervisory judge, the military judge, and the trial counsel addressing, *inter alia,* the substance of appellant's disqualification allegation. We find the supervisory judge had previously arraigned appellant and thus was known to appellant as a military judge. The supervisory judge attended appellant's trial to provide oversight of the military judge, as it was his first trial as a military judge. During trial, the supervisory judge sat behind the trial counsel in the spectator section of the court-room. At times, the supervisory judge took notes.

While appellant's court-martial was in session, there were two "irregular" contacts between the supervisory judge and the trial counsel. Both communications took place during the guilty plea phase of appellant's court-martial. One communication occurred during the providence inquiry and advised the trial counsel to communicate to the military judge that he needed to further address two elements of the specification of Charge II. The second communication consisted of the supervisory judge advising the trial counsel to request a recess. While there is a factual dispute in the record of trial as to which communication was verbal and which was written, the disputed issue is immaterial to resolution of the legal issue before this court. Both communications occurred while the supervisory judge was sitting in the spectator section of the courtroom.

We find the evidence supports that during trial the military judge became aware of one of the communications between the supervisory judge and the trial counsel, although perhaps not the precise mode of communication. Specifically, the military judge became aware of the supervisory judge's request for a recess via the trial counsel. The military judge's knowledge of the communication between the supervisory judge and the trial counsel occurred during the providence inquiry phase of appellant's court-martial. Subsequent to this communication between the trial counsel and the supervisory judge, when the court was placed in recess, the supervisory judge accompanied the military judge into his chambers. The supervisory judge also accompanied the judge into his chambers during deliberations.

---

[3] *See* R.C.M. 902(c)(1) wherein the term "proceeding" is defined to include "pretrial, trial, post-trial, appellate review, or other states of litigation." *See also Mitchell*, 39 M.J. at 143.

MARTINEZ – ARMY 20080699

Consonant with the observations of the Supreme Court of the United States in *Liljeberg*, we do not expect military judges to be prescient and "disqualify themselves based on facts they do not know." *Liljeberg*, 486 U.S. at 861. We find the evidence does not support that the military judge was aware of the communication between the supervisory judge and the trial counsel regarding the need to further address elements of the Specification of Charge II. As a result, we find no merit in appellant's assertion that the military judge should have disqualified himself (or discussed waiver) under R.C.M. 902(a) based on that communication in tandem with other facts of the case.

We assume, without deciding, however, that the military judge committed plain error when he did not disqualify himself or obtain waiver, under the provisions of R.C.M. 902(a), as a result of his knowledge of the supervisory judge's contact with the trial counsel regarding a request for recess *in tandem with* other facts of the case. The other facts include, but are not limited to: appellant's knowledge of the supervisory judge's status as a member of the U.S. Army Trial Judiciary; the circumstances of the supervisory judge's attendance at appellant's trial (*e.g.*, sitting behind the trial counsel and taking notes); her irregular communication with the trial counsel; the lack of timely and full disclosure on the record by the appropriate parties of the contacts between the supervisory judge and the trial counsel; and the supervisory judge's access—albeit permissible—to the military judge during recess and deliberations, which all contributed to appellant's allegation that the supervisory judge was assisting the prosecution and the military judge did not act impartially. We now analyze whether his failure to do so requires reversal under the standards set forth in *Liljeberg*.

The first *Liljeberg* factor requires consideration of "the risk of injustice to the parties in the particular case." 486 U.S. at 864. In the present case, our review of the record convinces us that appellant suffered no injustice based on the military judge's failure to disqualify himself. Importantly, we find the record of trial establishes no evidence of bias by the military judge in the adjudication of appellant's case. Based on review of the record and knowledge of all the facts, we find the military judge conducted appellant's trial in a fair and legal manner.[4] In that

---

[4] Although the military judge incorrectly made inquiries of the appellant related to incapacitation for duties versus drunk on station (*see* Section I), for the purpose of the *Care* inquiry, it was appropriate for the military judge to inquire into all the facts of the offense to which the appellant "pled" guilty. *United States v. Care*, 18 U.S.C.M.A. 535, 539, 40 C.M.R. 247, 251 (1969); *United States v. Davenport*, 9 M.J. 364 (C.M.A. 1980). The military judge's inquiry into the incorrect offense, however, did not create material prejudice to a substantial right (Article 59(a), UCMJ) of appellant or violate a due process right vis-à-vis the allegation of error regarding disqualification.

regard, we highlight that the military judge adjudged a sentence that included a confinement term one month less than what was in the appellant's pretrial agreement with the convening authority.

In addition, we note the record of trial reflects that the "senior military judge" who accompanied the military judge into chambers was performing a supervisory function. The contact the two judges had regarding appellant's case was not substantive, but rather limited to procedural matters. *See Jones*, 55 M.J. at 320 (addressing substantive and non-substantive acts vis-à-vis 28 U.S.C. § 455(a)). Such discussions were permitted under the judicial rules of conduct. *Code of Judicial Conduct for Army Trial and Appellate Judges*, Canon 2, Rule, 2.9(A)(3) (16 May 2008). We further note the two judges shared office space as a result of space constraints. In sum, the evidence supports that the contact and communications between the two judges was not improper. Finally, we note the convening authority granted appellant clemency in the form of sentence relief in response to his identification of the "unusual" contact between the supervisory judge and the trial counsel.

The second *Liljeberg* factor requires consideration that "the risk that denial of relief will produce injustice in other cases." 486 U.S. at 864. The disqualification challenge presented to the military judge in the case *sub judice* flowed from the actions of the supervisory judge and form the gravamen of appellant's claim. If such contacts had not occurred, we have little doubt that the supervisory judge's accompaniment of the military judge into chambers would not have given rise to a challenge under R.C.M. 902(a). Review of the record of trial establishes appellant's belief the supervisory judge was "assisting the prosecution" lacks legal merit. In so finding, we construe appellant's allegation of "assisting the prosecution" to aver a bias in favor of the prosecution. The evidence reflects that the supervisory judge's interactions with the trial counsel during the proceedings were intended to facilitate the *Care* inquiry after she was unsuccessful in gaining the attention of the military judge. The supervisory judge's action advanced the interests of appellant and the government insofar as they were intended to ensure the requirements of the providence inquiry were satisfied.[5] *Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247; *Davenport*, 9 M.J. 364. While the supervisory judge's actions are not to be

---

[5] Pursuant to a pretrial agreement, appellant agreed to plead guilty in exchange for a sentence limitation by the convening authority. In accordance with R.C.M. 910(e) and *Care*, 18 U.S.C.M.A. at 539, 40 C.M.R. at 251 and *Davenport*, 9 M.J. 364 (C.M.A. 1980), he was required to provide a factual predicate to the charges to which he pled guilty.

countenanced, her actions did not amount to a bias in favor of the prosecution.[6] Finally, as previously stated, knowledge of all the facts reflects the contact between the two judges was not improper.

Appellant's case presents rather novel facts. We recognize the extreme sensitivity members of the Army trial judiciary exercise in safeguarding the rights of accused—as demonstrated in the hundreds of cases that are reviewed before this court each year. Thus, notwithstanding our foregoing conclusions, these additional observations further convince us it is not necessary to reverse the results of the present case to ensure military judges exercise the appropriate degree of caution when dealing with counsel in the future.

The third *Liljeberg* factor considers "the risk of undermining the public's confidence in the judicial process." 486 U.S. at 864. The irregularity which gave rise to appellant's challenge relates to appearance of impropriety. The record is devoid of any evidence that the military judge demonstrated any bias towards or against either party. R.C.M. 902(b). Review of the entire record of appellant's case reveals the military judge adjudicated appellant's case in a fair and legal manner. When the circumstances giving rise to appellant's concern were brought to the attention of the convening authority, appellant was granted the clemency requested, though there was no finding of legal error. With full knowledge of all the facts of appellant's case and recognizing the circumstances in appellant's case are unlikely to recur, we conclude reversal of appellant's conviction is not required to avoid undermining the public's confidence in the judicial process. After careful application of the *Liljeberg* factors to appellant's case, we are convinced the remaining finding of guilty and sentence set forth below should be affirmed and no injustice will result from such affirmance.

Notwithstanding our conclusions regarding the merits of appellant's allegation, we nonetheless find this case troublesome. The circumstances which gave rise to appellant's challenge (*i.e.*, communication between the supervisory judge and trial counsel) could easily have been avoided. Although we recognize and appreciate the role of supervisory judges in protecting the interests of an accused

---

[6] *Cf. United States v. Chavira*, 25 M.J. 705, 707-708 (A.C.M.R. 1987) (this court found error for improper *ex parte* contact by a military judge who was trying to "accomplish the ends of justice, but [did so] . . . contrary to law" when he strongly suggested trial counsel obtain another panel). Distinct from our conclusion herein pertaining to the second *Liljeberg* factor, the conclusion in *Chavira* pertained to whether error occurred (*i.e., the finding of ex parte* communication). *See also Quintanilla*, 56 M.J. at 44, 79 (commenting that not all *ex parte* communications require disqualification under R.C.M. 902(a), "particularly if the evidence shows that the communication did not involve . . . favoritism for one side").

while providing oversight of new military judges, the issues that arose in appellant's case could have been handled differently to avoid the direct communication between the supervisory judge and trial counsel. Although not all ex parte communications between judges and counsel are impermissible, in general most are. *See Quintanilla*, 56 M.J. at 37. As a result, regardless of motive, we caution members of the judiciary and counsel alike to avoid *ex parte* communications that might create demonstrations of bias (R.C.M. 902(b)) or a perception of bias (R.C.M. 902(a)). regardless of motive. This ensures strict compliance with the rules while maintaining and promoting confidence in our judiciary and justice system.[7] In addition, once the irregular contact between the supervisory judge and trial counsel occurred there should have been timely and full disclosure on the record and the defense counsel allowed to inquire, as appropriate, whether any basis for disqualification existed. *See e.g.*, *Quintanilla*, 56 M.J. 77-79. Only with a timely and full disclosure could the defense counsel have made a decision regarding waiver under R.C.M. 902(e). *Id.* Finally, once the defense counsel observed conduct he believed may give rise to an issue under R.C.M. 902(a), he should have timely raised the issue. *See e.g., United States v. Burton*, 52 M.J. 223, 226 (C.A.A.F. 2000) (noting failure of the defense to challenge the impartiality of a military judge may permit an inference that the defense believes the military judge remained impartial).

The appearance standard in R.C.M. 902(a) is intended to promote public confidence in the integrity of the judicial system. *Quintanilla*, 56 M.J. at 45. Moreover, as our superior court noted in *Quintanilla*, "[t]he rule also serves to reassure the parties as to the fairness of the proceedings, because the line between bias in appearance and in reality may be so thin as to be indiscernible." *Id.* (citations omitted). As a result, we caution judges and counsel alike to exercise the diligence necessary to preserve and promote that public confidence.

---

[7] In *Quintanilla*, our superior court noted that certain *ex parte* communications might be permissible (*e.g.*, "incidental communications that involve noncontroversial matters such as routine scheduling discussions . . . does not mandate disqualification"). 56 M.J. at 44 (citations omitted). When such *ex parte* communications occur, however, *Quintanilla* cited to a multi-factor test one must engage in to determine whether the *ex parte* communication necessitates disqualification under R.C.M. 902. *Id.* (citations omitted). As a result, notwithstanding the conclusion that some *ex parte* contact is permissible, the better practice for avoiding unnecessary litigation and preserving and promoting confidence in our military justice system is avoiding *ex parte* contact altogether. We recognize, however, that when such *ex parte* contact occurs, the multi-factor test provides a useful framework for assessing whether disqualification *must* occur.

MARTINEZ – ARMY 20080699

### III.  CONCLUSION

The findings of guilty to Charge II and its specification are set aside and dismissed.  The remaining findings of guilty are affirmed.  We have considered appellant's other assignments of error, including matters raised pursuant to *United States v. Grostefon*, 12 M.J. at 431 (C.M.A. 1982) and find them without merit.  Reassessing the sentence on the basis of the error noted, the entire record, and the principles of *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986), and *United States v. Moffeit*, 63 M. J. 40 (C.A.A.F. 2006), including Judge Baker's concurring opinion, we affirm only so much of the sentence as provides for bad-conduct discharge, confinement for 104 days and reduction to the grade of Private E1.  All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of his sentence set aside by this decision, are ordered restored.  *See* UCMJ arts. 58b(c) and 75(a).

Senior Judge CONN and Judge HOFFMAN concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court