UNITED STATES, Appellee

v.

Inez T. MARTINEZ Jr., Sergeant
U.S. Army, Appellant

No. 11-0167

Crim. App. No. 20080699

United States Court of Appeals for the Armed Forces

Argued May 24, 2011

Decided June 24, 2011

ERDMANN, J., delivered the opinion of the court, in which
EFFRON, C.J., and BAKER and STUCKY, JJ., joined.  RYAN, J.,
filed a separate opinion concurring in the result.

Counsel


For Appellant:  Captain John L. Schriver (argued); Colonel Mark
Tellitocci, Colonel Imogene M. Jamison, Lieutenant Colonel Peter
Kageleiry Jr, Lieutenant Colonel Jonathan Potter, and Captain
Brent A. Goodwin (on brief).

For Appellee:  Captain Stephen E. Latino (argued); Colonel
Michael E. Mulligan, Major Amber J. Williams, and Major Adam S.
Kazin (on brief).

Military Judge:  Debra L. Boudreau and Thomas P. Molloy


**This opinion is subject to revision before final publication.**

United States v. Martinez, No. 11-0167/AR

Judge ERDMANN delivered the opinion of the court.

Sergeant Inez T. Martinez entered guilty pleas before a military judge sitting as a special court-martial to absence without leave in violation of Article 86, UCMJ, 10 U.S.C. § 886, and to being drunk on station in violation of Article 134, UCMJ, 10 U.S.C. § 934 (as a lesser included offense of drunk on duty, Article 112, UCMJ, 10 U.S.C. § 912). The military judge found Martinez guilty in accordance with his pleas and sentenced him to reduction to E-1, confinement for six months, and a bad-conduct discharge. This case presents a unique issue concerning the intervention of a supervising judge, who had been the initial detailed judge of record, into Martinez's trial. We granted review of the following issue:

> Whether a reasonable person would question the trial judge's impartiality when a senior military judge, who appeared to have assisted the Government during trial, entered the trial judge's chambers during recesses and deliberations, in violation of Appellant's right to due process.[1]

We conclude that while the conduct of the supervising judge was improper, it did not materially prejudice Martinez's substantial rights, nor is he entitled to relief under the criteria of Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847 (1988). We therefore affirm the United States Army Court of Criminal Appeals.

---

[1] United States v. Martinez, 69 M.J. 490 (C.A.A.F. 2011) (order granting review).

2

## The Trial

The military judge at the time of trial was Judge Molloy, a reservist. The issue before this court arose from the conduct of Judge Molloy's supervising judge, Judge Boudreau, during Martinez's trial. Judge Boudreau had initially been detailed as the military judge in this case and had presided over Martinez's arraignment. In addition to being Judge Molloy's supervising judge, she was also his rater. During the providence inquiry, Judge Boudreau sat behind the trial counsel in the spectator section of the courtroom to observe Judge Molloy, as this was his first court-martial as a military judge.

The record reflects that on at least two separate occasions during the proceedings, Judge Boudreau privately communicated with the trial counsel either orally or in writing.[2] On one occasion Judge Boudreau was observed passing a note to the trial counsel, apparently informing him of a perceived deficiency in the colloquy between Judge Molloy and Martinez. On another occasion, Judge Boudreau asked the trial counsel to request a recess, which he did. When Judge Molloy retired to his chambers for the recess, he was followed by Judge Boudreau. Judge Boudreau was also observed entering the chambers when the court

---

[2] While there are some discrepancies between the defense counsel's allegations as to Judge Boudreau's conduct and the post-trial affidavits of Judge Boudreau and the trial counsel, there is no dispute that some ex parte communication occurred during the trial.

was closed for deliberations.[3] There was no explanation on the record as to Judge Boudreau's supervisory status or the reason for her presence in the courtroom. Although Martinez's defense counsel observed Judge Boudreau's conduct during the trial, he did not object. There is no evidence in the record that anyone informed Judge Molloy of Judge Boudreau's communications with the trial counsel during the trial.[4]

### Clemency Matters and Convening Authority Action

After trial, the staff judge advocate prepared his written advice to the convening authority as required by Article 60, UCMJ, 10 U.S.C. § 860, and Rule for Courts-Martial (R.C.M.) 1106. He recommended that the convening authority approve a finding of incapacitation for duty through the prior wrongful indulgence of alcohol, a violation of Article 134, UCMJ, rather than the finding of guilty to the drunk on station offense. In his response, Martinez's defense counsel did not address the staff judge advocate's recommendation concerning the approval of

---

[3] Judge Boudreau explained in her post-trial affidavit that her office served a dual purpose as the judge's chambers.

[4] The lower court found that the evidence supports that during the trial Judge Molloy somehow became aware of Judge Boudreau's communication with the trial counsel concerning a need for a recess. Judge Molloy's post-trial affidavit does state that "at least once we took a recess because COL Boudreau needed to meet with me." This is the only indication in the record that Judge Molloy was aware that Judge Boudreau may have asked the trial counsel to request a recess. However, there is no evidence in the record as to when or by whom Judge Molloy was provided that information.

the incapacitation for duty charge.[5]  He did, however, allege

that the "unusual contact" between Judge Boudreau and trial

counsel during the trial had created an appearance of

partiality.  Martinez's defense counsel noted that he had not

objected to the conduct at trial, which he acknowledged was an

error on his part.  As a remedy he requested that the convening

authority approve only 164 days of confinement, reduction to

Private E-1, and a bad-conduct discharge.  In making this

request, the defense counsel noted that "the defense believes

that granting SGT Martinez's modest request for clemency [would]

resolve this issue and remove it from further appellate

scrutiny."

Before completing his addendum to his original

recommendation to the convening authority, the staff judge

advocate obtained an affidavit from the trial counsel.  The

trial counsel acknowledged that Judge Boudreau had communicated

with him twice during the trial.  Following his review of the

affidavit, the staff judge advocate advised the convening

authority that although he thought that Judge Boudreau and Judge

Molloy had acted impartially, he recommended that the convening

authority approve the requested clemency "to remedy any

appearance of partiality."  The convening authority took action

---

[5] The clemency matters inaccurately refer to Sergeant Martinez
having been found guilty of "wrongful overindulgence of liquor"
in violation of Article 134, UCMJ.

consistent with the staff judge advocate's advice, including the approval of the incapacitation for duty through prior wrongful indulgence of alcohol charge, and granted the clemency relief requested by Martinez.

### Decision by the Army Court of Criminal Appeals

Before the Court of Criminal Appeals, Martinez argued that Judge Molloy should have recused himself under the provisions of R.C.M. 902(a). He argued that a reasonable person would question Judge Molloy's impartiality as it appeared that Judge Boudreau had been assisting the prosecution during the trial and had then accompanied Judge Molloy into his chambers during the recess and deliberations. United States v. Martinez, No. ARMY 20080699, slip op. at 9 (A. Ct. Crim. App. Oct. 7, 2010).[6]

The lower court assumed without deciding that Judge Molloy committed plain error when he did not disqualify himself or obtain a waiver, and then analyzed whether his failure to do so required reversal under the standards set forth in Liljeberg. After conducting an analysis consistent with Liljeberg the Court of Criminal Appeals determined that reversal was not required. However, the court went on to state that:

---

[6] Although not an issue before this court, the Court of Criminal Appeals also determined that the offense of incapacitation for duty through the prior wrongful indulgence of alcohol was not a lesser included offence of drunk on station. Accordingly, the lower court set aside and dismissed that finding, reassessed the sentence, and affirmed only 104 days of the confinement.

Notwithstanding our conclusions regarding the merits of appellant's allegation, we nonetheless find this case troublesome.  The circumstances which gave rise to appellant's challenge (i.e., communication between the supervisory judge and trial counsel) could easily have been avoided.  Although we recognize and appreciate the role of supervisory judges in protecting the interests of an accused while providing oversight of new military judges, the issues that arose in appellant's case could have been handled differently to avoid the direct communication between the supervisory judge and trial counsel.  Although not all ex parte communications between judges and counsel are impermissible, in general most are.  As a result, regardless of motive, we caution members of the judiciary and counsel alike to avoid ex parte communications that might create demonstrations of bias (R.C.M. 902(b)) or a perception of bias (R.C.M. 902(a)), regardless of motive.  This ensures strict compliance with the rules while maintaining and promoting confidence in our judiciary and justice system.  In addition, once irregular contact between the supervisory judge and trial counsel occurred there should have been timely and full disclosure on the record and the defense counsel allowed to inquire, as appropriate, whether any basis for disqualification existed.  Only with a timely and full disclosure could the defense counsel have made a decision regarding waiver under R.C.M. 902(e).  Finally, once the defense counsel observed conduct he believed may give rise to an issue under R.C.M. 902(a), he should have timely raised the issue.  See e.g., United States v. Burton, 52 M.J. 223, 226 (C.A.A.F. 2000) (noting failure of the defense to challenge the impartiality of a military judge may permit an inference that the defense believes the military judge remained impartial).

The appearance standard in R.C.M. 902(a) is intended to promote public confidence in the integrity of the judicial system.  Moreover, as our superior court noted in [United States v. ]Quintanilla, "[t]he rule also serves to reassure the parties as to the fairness of the proceedings, because the line between bias in appearance and in reality may be so thin as to be indiscernible."  [56 M.J. 37, 45 (C.A.A.F. 2001)] (citations omitted).  As a result, we caution judges

7

and counsel alike to exercise the diligence necessary
to preserve and promote that public confidence.

Martinez, No. ARMY 20080699, slip op. at 14-15 (citations omitted).

## Discussion

When an appellant, as in this case, does not raise the issue of disqualification until appeal, we examine the claim under the plain error standard of review. United States v. Jones, 55 M.J. 317, 320 (C.A.A.F. 2001). Plain error occurs when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice. United States v. Maynard, 66 M.J. 242, 244 (C.A.A.F. 2008).

"An accused has a constitutional right to an impartial judge." United States v. Butcher, 56 M.J. 87, 90 (C.A.A.F. 2001) (quoting United States v. Wright, 52 M.J. 136, 140 (C.A.A.F. 1999)). R.C.M. 902 recognizes this right and generally provides two bases for disqualification of a military judge. R.C.M. 902(b) provides specific circumstances requiring disqualification and is not at issue in this case. R.C.M. 902(a) provides for a general rule of disqualification for certain appearances of partiality. See United States v. Quintanilla, 56 M.J. 37, 45 (C.A.A.F. 2001). R.C.M. 902(a) provides:

> Except as provided in subsection (e) [authorizes
> waiver of any disqualification under this subsection]
> of this rule, a military judge shall disqualify

8

> himself or herself in any proceeding in which that
> military judge's impartiality might reasonably be
> questioned.

"[W]hen a military judge's impartiality is challenged on appeal, the test is whether, taken as a whole in the context of this trial, a court-martial's legality, fairness, and impartiality were put into doubt" by the military judge's actions. United States v. Burton, 52 M.J. 223, 226 (C.A.A.F. 2000) (quotation marks omitted). The appearance of impartiality is reviewed on appeal objectively and is tested under the standard set forth in United States v. Kincheloe, i.e., "[a]ny conduct that would lead a reasonable man knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned is a basis for the judge's disqualification." 14 M.J. 40, 50 (C.M.A. 1982) (quotation marks omitted); see also Wright, 52 M.J. at 141; Quintanilla, 56 M.J. at 78. Because not every judicial disqualification requires reversal, we have also adopted the standards announced by the Supreme Court in Liljeberg to determine whether a military judge's conduct warrants that remedy to vindicate public confidence in the military justice system. United States v. Butcher, 56 M.J. 87, 92 (C.A.A.F. 2001).

The Errors

The record of trial demonstrates that Judge Boudreau presided over Martinez's arraignment and subsequently detailed

9

Judge Molloy as judge for Martinez's trial.  As noted, she was also Judge Molloy's rater and supervisory judge.  Although Judge Boudreau did not preside over Martinez's trial, she continued to have judicial responsibilities pursuant to R.C.M. 1104(a)(2) to authenticate the portion of the record of the proceedings over which she presided.  In addition, she continued to have administrative responsibility for the circuit judiciary in her capacity as Chief Circuit Judge for the circuit in which the court-martial was conducted and as Judge Molloy's supervisor.[7] These ongoing responsibilities required that Judge Boudreau ensure that her conduct did not provide a basis to question either her or Judge Molloy's impartiality during Martinez's court-martial.

Rule 1.2 of the American Bar Association Model Code of Judicial Conduct (Model Code) mirrored by the Code of Judicial Conduct for Army Trial and Appellate Judges (Army Code) provides that "A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety or the appearance of impropriety."  Paramount among Judge Boudreau's continuing ethical responsibilities, consistent with

---

[7] See generally Dep't of the Army, Reg. 27-10, Legal Services, Military Justice ch. 8 (Nov. 16, 2005) (describing generally the Army Trial Judiciary-Military Judge Program and the supervisory responsibilities for Chief Circuit Judges).

the Model Code and pursuant to the Army Code, was to ensure

against improper ex parte communications and the appearance of

partiality. Specifically, Rule 2.9 provides a general

prohibition against initiating, permitting, or considering ex

parte communications involving substantive matters, except in

very limited circumstances. Judge Boudreau's communications

with the trial counsel concerning the legal sufficiency of the

providence inquiry and/or the legal sufficiency of the inquiry

into the pretrial agreement involved substantive matters and it

was plain and obvious error for her to initiate those ex parte

communications with trial counsel during the trial. Compounding

this error, Judge Boudreau entered the judge's chambers during a

recess she initiated as well as during the deliberations, and

failed to inform Judge Molloy that she had been communicating ex

parte with the prosecution.[8] See supra note 4 and accompanying

text. We therefore share the concerns expressed by the Court of

Criminal Appeals cited earlier in this opinion.

As noted, when a military judge's impartiality is

challenged on appeal under R.C.M. 902(a), "the test is whether,

taken as a whole in the context of this trial, a court-martial's

legality, fairness, and impartiality were put into doubt by the

military judge's actions." Burton, 52 M.J. at 226 (quotation

---

[8] In this analysis it is not determinative whether the judge
actually knew of the facts creating the appearance of partiality

marks omitted).  We consider this risk by applying an objective standard, i.e., "any conduct that would lead a reasonable man knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned."  Kincheloe, 14 M.J. at 50.  A reasonable person knowing all the circumstances would have observed Judge Boudreau privately conferring with the trial counsel and then accompanying the presiding judge into his chambers during recess and deliberations.  Judge Boudreau's course of conduct under the circumstances created an appearance that neither she nor Judge Molloy was impartial

Prejudice

In a plain error context we look to see if the error materially prejudiced the substantial rights of the appellant[9] and whether, under Liljeberg, reversal is warranted.  We conduct both inquiries even if we conclude that there is no Article 59(a) prejudice as it is possible that an appellant may not have suffered any material prejudice to a substantial right, but that reversal would still be warranted under Liljeberg.

We initially consider whether the error materially prejudiced Martinez's substantial rights.[10]  We first note that the record does not support, and Martinez has not claimed, that either Judge Boudreau or Judge Molloy was actually biased.

_____

as long as the public might reasonably believe that he or she knew.  Liljeberg, 486 U.S. at 859-60.
[9] Article 59(a), UCMJ, 10 U.S.C. § 859(a).

12

Therefore, we look to see if the appearance created by Judge Boudreau's conduct materially prejudiced Martinez. We find that it did not.

The staff judge advocate's initial post-trial advice to the convening authority recommended that the sentence be approved as adjudged. Martinez then submitted his clemency matters in which he noted Judge Boudreau's "highly unusual" actions and, as a remedy, asked the convening authority to approve only 164 days of the adjudged confinement, reduction to Private E-1, and a bad-conduct discharge. In doing so, Martinez asserted that granting the clemency request would resolve that issue and remove it from further appellate scrutiny. This certainly implied that if the clemency request was approved, it would rectify any prejudice suffered by him. The convening authority approved a sentence consistent with Martinez's request. Accordingly, we hold that under the circumstances of this case Martinez's substantial rights were not materially prejudiced.

We now apply the three-part test identified by the Supreme Court in Liljeberg to determine if reversal is otherwise warranted under the circumstances to vindicate the public's confidence in the military justice system. In Liljeberg, the Supreme Court recognized that the purpose of 28 U.S.C. § 455(a), the civilian counterpart of R.C.M. 902(a), is "to promote public

---

[10] United States v. Powell, 49 M.J. 460, 463-465 (C.A.A.F. 1998).

United States v. Martinez, No. 11-0167/AR

confidence in the integrity of the judicial process."
Liljeberg, 486 U.S. at 860.  In furtherance of that purpose, the
Supreme Court held that in determining whether a judgment should
be vacated "it is appropriate to consider the risk of injustice
to the parties in the particular case, the risk that the denial
of relief will produce injustice in other cases, and the risk of
undermining the public's confidence in the judicial process."
Id. at 864, see also United States v. McIlwain, 66 M.J. 312, 315
(C.A.A.F. 2008); Butcher, 56 M.J. at 92-93; Quintanilla, 56 M.J.
at 80-81.

    The first two parts of the Liljeberg test are not
implicated under the facts of this case.  As to the first part,
the record does not support nor has Martinez identified any
specific injustice that he personally suffered under the
circumstances.  Moreover, we also note that the confinement
adjudged by Judge Molloy was one month less that the maximum
agreed to by Martinez in his pretrial agreement.  As to the
second part of the test, we conclude that this case is analogous
to United States v. Butcher where we stated that "[i]t is not
necessary to reverse the results of the present trial in order
to ensure that military judges exercise the appropriate degree
of discretion in the future."  Butcher, 56 M.J. at 93.

    The third part of the Liljeberg test, however, requires
further discussion.  Here we consider whether denying a remedy

14

to Martinez under the circumstances of this case will risk undermining the public's confidence in the military justice system. We consider this risk by again applying an objective standard similar to the standard applied in the initial R.C.M. 902(a) analysis. This analysis, however, differs from the initial R.C.M. 902(a) inquiry in which appellate courts determine whether the military judge should have recused himself or herself. In the remedy analysis we do not limit our review to facts relevant to recusal, but rather review the entire proceedings, to include any post-trial proceeding, the convening authority action, the action of the Court of Criminal Appeals, or other facts relevant to the Liljeberg test.

This remedy analysis involves the public confidence in the military justice system in the context of how that system responds once it has been determined that a military judge was disqualified under R.C.M. 902(a) and should have been recused. That analysis must necessarily include a review of all post-trial actions to evaluate how the public would perceive that response. For example, if further proceedings provided an explanation for a situation that occurred at trial, that may be sufficient to minimize the risk that the conduct would undermine the public's confidence in the military justice system. If a remedy is granted after further proceedings, that too would impact the risk of undermining the public's confidence.

United States v. Martinez, No. 11-0167/AR

On the other hand, if the appearance is created and is not explained at trial, or if no remedy is granted, or if there was a remedy that appears inadequate from the perspective of a reasonable person, those facts would increase the risk that the conduct (creating the appearance) would undermine the public's confidence in the military justice system.  Here, viewing the entire proceedings, including the trial, the clemency request, the relief provided by the convening authority, and the appellate proceedings before the lower court and before this court, we are convinced that the public's confidence in the military justice system would not be undermined.  To the contrary, the proceedings in this case recognized the error and fashioned an appropriate remedy.  Under these circumstances we believe that the public's confidence in the military justice system would not be undermined.

## Decision

The decision of the United States Army Court of Criminal Appeals is affirmed.

16

United States v. Martinez, No. 11-0167/AR

RYAN, Judge (concurring in the result):

While I agree with the majority that Judge Boudreau should not have communicated with the trial counsel -- even if it was only to ensure that the providence inquiry in a guilty plea case with a pretrial agreement was done correctly -- I write separately because it is unclear to me why Judge Boudreau's ethical violations dictate the recusal analysis in this case. Judge Boudreau was not the trial judge; Judge Molloy was. And it was Judge Molloy, the trial judge, who conducted the providence inquiry, accepted Appellant's guilty plea, and sentenced him -- the matters which any "reasonable person" aware of all the facts would be concerned with. See United States v. Martinez, __ M.J. __ (12) (C.A.A.F. 2011).

The issue we granted concerns "[w]hether a reasonable person would question the trial judge's impartiality" based on the actions of the supervisory judge in this case. United States v. Martinez, 69 M.J. 490 (C.A.A.F. 2011) (order granting review). Therefore, in my view, the recusal analysis should focus on whether a reasonable person would question the impartiality of the trial judge, so that disqualification of the trial judge was necessary -- not whether the supervising or observing judge acted inappropriately. And, as the majority acknowledges,

United States v. Martinez, No. 11-0167/AR

"[t]here is no evidence in the record that anyone informed Judge Molloy of Judge Boudreau's communications with the trial counsel during the trial." Martinez, __ M.J. at __ (4). Bootstrapping Judge Boudreau's questionable actions into a generalized recusal analysis based on her supervisory role and duty to authenticate the arraignment portion of the record under Rule for Courts-Martial (R.C.M.) 1104(a)(2) seems a tenuous basis for finding that the "court-martial's legality, fairness, and impartiality were put into doubt." Martinez, __ M.J. at __ (9) (quoting United States v. Burton, 52 M.J. 223, 226 (C.A.A.F. 2000)). I respectfully concur in the result.