# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TOZZI, CAMPANELLA, and CELTNIEKS
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Staff Sergeant ROBERT D. CARLSON**
**United States Army, Appellant**

ARMY 20130129

Headquarters, United States Army Alaska
Stefan Wolfe, Military Judge
Colonel Tyler J. Harder, Staff Judge Advocate

For Appellant:  Colonel Kevin Boyle, JA; Lieutenant Colonel Jonathan F. Potter, JA; Captain Michael J. Millios, JA (on brief); Colonel Kevin Boyle, JA; Major Amy E. Nieman, JA; Captain Michael J. Millios, JA (on reply brief).

For Appellee:  Major A.G. Courie, III, JA; Major John K. Choike, JA; Captain Jaclyn E. Shea, JA (on brief).

29 May 2015

----------------------------------
MEMORANDUM OPINION
----------------------------------

CAMPANELLA, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of one specification of assault consummated by a battery, four specifications of aggravated assault, one specification of willfully discharging a firearm under such circumstances as to endanger human life, and one novel specification of wrongfully and wantonly shooting at a police officer with a pistol, conduct likely to cause death or grievous bodily harm, in violation of Articles 128 and 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 928, 934 (2012).  The military judge sentenced appellant to a dishonorable discharge, confinement for eight years, forfeiture of all pay and allowances, and reduction to

the grade of E-1.  The convening authority deferred the adjudged forfeitures until action and waived automatic forfeitures for a period of six months.[1]

This case is before for review us pursuant to Article 66, UCMJ.  Three of appellant's four assignments of error warrant discussion and two warrant relief.  First, appellant argues the military judge should have disqualified himself based on comments made when the military judge was a trial counsel over five years before appellant's court-martial.  For the reasons explained below, we disagree.  Second, we find an unreasonable multiplication of charges where appellant was found guilty of both aggravated assault of a police officer and wrongfully and wantonly shooting at that same police officer.  Third, we grant relief for the dilatory post-trial processing of appellant's case.  Appellant's personal submissions made pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) do not warrant relief.

**BACKGROUND**

### a.  Appellant's Criminal Conduct

In the early morning hours of 22 July 2012, appellant came home to his off-post residence from a bar with his wife, CS, and her friend, VW.  Appellant slept on the couch while CS and VW slept in CS's bedroom.  After some time, appellant kicked the bedroom door open, grabbed CS's phone, and left the room.  He ultimately ended up outside, and his wife tried to retrieve her phone from him.  Appellant knocked his wife to the ground and hit her twice in the face.  Appellant's neighbor, Sergeant (SGT) PF saw appellant's assault and called the police.

At approximately 0430, SGT KL, a member of the Fairbanks Police Department, arrived at appellant's house.  Sergeant KL was aware based upon a neighbor's report that appellant had stated words to the effect of, "if the police show up, there will be bloodshed."

At some point, appellant loaded his Beretta .40 caliber pistol.  He wanted to shoot himself but could not bring himself to do it.  Because it was summertime in Alaska, it was daylight with clouds and haze outside.  Appellant pointed his pistol in the direction of SGT KL, CS, VW, and SGT PF and fired nine rounds through the

---

[1] The six months of waived forfeitures entirely overlapped with the period of deferred forfeitures.  The convening authority might have provided appellant and his dependants a greater benefit had he disapproved, mitigated, or suspended the adjudged forfeitures at action and waived automatic forfeitures for a period of six months afterwards.  However, we find no abuse of discretion in overlapping the waiver and deferment of forfeitures.  *See* Rule for Courts-Martial [hereinafter "R.C.M."] 1101(c)(3) ("The decision of the authority acting on the deferment request shall be subject to judicial review only for abuse of discretion.").

glass window. One round struck SGT KL's police cruiser, and three rounds struck a residence on the opposite side of the street. Eventually appellant walked outside and surrendered to the police.

### b. Appellant's Court-Martial

During appellant's court-martial, the parties and military judge spent considerable time addressing issues relating to appellant's mental health. At the initial Article 39(a), UCMJ, session, the military judge noted that the government had inadvertently obtained the "long-form" R.C.M. 706 results and ordered the government not to review that document. The military judge also granted a defense motion for an expert consultant in the field of forensic psychiatry.

At the providence inquiry, the military judge noted appellant had undergone an examination pursuant to R.C.M. 706. He properly explained to appellant various defenses based on mental responsibility, including lack of mental responsibility under Article 50a, UCMJ, and the fact that one's mental condition might negate elements such as specific intent or knowledge. After being properly advised of these defenses, appellant disclaimed having those defenses.

During the pre-sentencing hearing, appellant called Dr. V, who testified that she diagnosed appellant with post-traumatic stress disorder, based in large part on appellant's three combat deployments. Appellant's unsworn statement addressed his extensive combat experience resulting in post-traumatic stress. The military judge, when recommending the convening authority defer and waive forfeitures, did misstate the number of appellant's deployments, saying he had been deployed twice rather than three times.

### c. The Military Judge's 2007 Comments Made as a Prosecutor

In 2007, the military judge, then-Major (MAJ) Wolfe, served as a trial counsel in the Military District of Washington. In this capacity, MAJ Wolfe prosecuted First Lieutenant (1LT) EW, who, while being treated at a military hospital, allegedly waved a gun at a psychiatric nurse, fired two bullets into the ceiling, and shot herself in the stomach. It appears 1LT EW intended to offer the defense of lack of mental responsibility at a court-martial.[2]

---

[2] Appellant has appended to the record a 2007 Washington Post article addressing 1LT EW's case and an email exchange between MAJ Wolfe and 1LT EW's defense counsel. The government did not challenge appellant's motion to admit these documents.

In that case, MAJ Wolfe sent an email to the 1LT EW's defense counsel, in which he self-admittedly "ranted" about 1LT EW's decision not to accept a resignation in lieu of trial by court-martial (RILO):

> I am equally baffled by the decision to go to court. []
> Since I have started researching this issue [of lack of mental responsibility] I have found that:
>
> 1) the defense wins 1% of these cases (source – Dr. [L]);
> 2) the bench book instructions are overwhelmingly Gov friendly (read the definition of "clear and convincing", to me it is better than reasonable doubt)
> 3) Even if she wins and is acquitted, she still goes to jail!!! Ok, not jail, but Butner, and for an undetermined time (ask Hinckley what that means). Also I am not sure that "not guilty by reason of mental responsibility" is really the same as "not guilty" in the eyes of society. I would prefer to have a [general] discharge, then be acquitted for this reason. Even if she wins, from my seat, she loses and is worse off vis-a-vis a RILO.
>
> For example, the Gov wins if the panel finds the evidence "unclear" or they are not "convinced". Who doesn't find psycho-babble unclear. How many diagnoses does she have from how many doctors? (and I don't need to convince the whole panel, I think just more than a third). Re-read the company commander's recommendation on the RILO. How many people out there believe that insanity should never be a defense, that it is just, as he said, an "excuse."
>
> From my perspective, that's why we supported the RILO. It was a fair compromise. But she has now demanded her day in court. I don't know what will happen in regards to referral, but I won't feel too bad if we give her what she wants. I know I have said this before, but this is a HUGE gamble for little payout.
>
> I was a PEB attorney at [Walter Reed Army Medical Center.] I see little or no money for her if she is retired. I see no extra VA benefits from an Honorable vs. RILO. Essentially she is making this gamble for commissary privileges – and this assumes that the Army medically retires her (likely, but not certain). Weighed that against

the possibility of being convicted of numerous violent felonies…..

OK, I've ranted.  She made the call she's made.
The record does not reflect the ultimate disposition of 1LT EW's case.

## LAW AND DISCUSSION

*Disqualification of the Military Judge*

It is axiomatic that "[a]n accused has a right to an impartial judge."  *United States v. Butcher*, 56 M.J. 87, 90 (C.A.A.F. 2001) (quoting *United States v. Wright*, 52 M.J. 136, 140 (C.A.A.F. 1999)).  R.C.M. 902 implements this rule and "provides two bases for disqualification of a military judge."  *United States v. Martinez*, 70 M.J. 154, 157 (C.A.A.F. 2011).  The first basis is a military judge's duty to "disqualify himself or herself in any proceeding in which that military judge's impartiality might reasonably be questioned."  R.C.M. 902(a).  The second basis involves the specific, enumerated circumstances requiring disqualification listed at R.C.M. 902(b).  Our superior court has explained disqualification analysis under R.C.M. 902 as follows:

> [I]n short, RCM 902 . . . requires consideration of disqualification under a two-step analysis.  The first step asks whether disqualification is required under the specific circumstances listed in RCM 902(b).  If the answer to that question is no, the second step asks whether the circumstances nonetheless warrant disqualification based upon a reasonable appearance of bias.

*United States v. Quintanilla*, 56 M.J. 37, 45 (C.A.A.F. 2001).  Appellant does not ground his argument in the specific prohibitions of R.C.M. 902(b), and we discern no such grounds for disqualification in the record.

Instead, appellant argues the military judge's "impartiality might reasonably be questioned" based upon his 2007 email.  R.C.M. 902(a).  "[W]hen a military judge's impartiality is challenged on appeal, the test is whether, taken as a whole in the context of this trial, a court-martial's legality, fairness, and impartiality were put into doubt" by the military judge's actions.  *Martinez*, 70 M.J. at 157-58 (quoting *United States v. Burton*, 52 M.J. 223, 226 (C.A.A.F. 2000)) (additional quotation marks omitted).  We review the appearance of impartiality using an objective test.  *Id.* at 158.  In applying the above test, we utilize the standard set forth in *United States v. Kicheloe*, 14 M.J. 40, 50 (C.M.A. 1982), that is, "[a]ny conduct that would lead a reasonable [person] knowing all the circumstances to the conclusion that the

judge's impartiality might reasonably be questioned is a basis for the judge's disqualification." (quotation marks omitted).

We conclude the military judge was not required to disqualify himself based upon his 2007 email. First, MAJ Wolfe made those comments in his capacity as a litigator several years before he became a military judge. "Before they arrive on the bench . . . judges have often committed themselves on legal issues that they must later rule upon." *Republican Party v. White*, 536 U.S. 765, 779 (2002) (citing *Laird v. Tatum*, 409 U.S. 824, 831-33 (1972) (mem. op.) ("describing Justice Black's participation in several cases construing and deciding the constitutionality of the Fair Labor Standards Act, even though as a Senator he had been one of its principal authors; and Chief Justice Hughes's authorship of the opinion overruling *Adkins* v. *Children's Hospital of D.C.,* 261 U.S. 525 . . . (1923), a case he had criticized in a book written before his appointment to the Court"). As then-Justice Rehnquist noted, "[t]he fact that some of these propensities may have been publicly articulated prior to [becoming a judge] cannot, in my opinion, be regarded as anything more than a random circumstance that should not by itself form a basis for disqualification." *Laird*, 409 U.S. at 836.[3] The fact that MAJ Wolfe made his comments before his designation as a military judge weighs against a finding of apparent bias.

Second, MAJ Wolfe's 2007 email was not directed at a party in the instant case. It was directed at opposing counsel in an entirely unrelated case from years earlier in his capacity as an advocate for the government.[4] The "traditional sense in which" impartiality is used "guarantees a *party* that the judge who hears his case will apply the law to him in the same way he applies it to the other party." *Republican Party*, 536 U.S. at 776 (emphasis added). Taken in context, MAJ Wolfe's email does not imply that he would favor one party over another in appellant's case.

---

[3] At the same time, we recognize that a military judge might very well need to disqualify himself or herself under R.C.M. 902(a) for comments made before becoming a military judge. However, it is appropriate to distinguish comments made before reaching the bench differently than comments made while on the bench, especially when the comments address legal issues generally and not the litigating parties.

[4] We are mindful MAJ Wolfe made his comments as a prosecutor, and that prosecutors have special duties distinct from ordinary attorneys. *See Berger v. United States*, 295 U.S. 78, 88 (1935) (noting that prosecutors have a duty to see "that justice shall be done" and to only "strike hard blows" and not "foul ones."). Although MAJ Wolfe's comments may have been intemperate, it is difficult to imagine any litigator – whether a prosecutor or otherwise – not having drafted intemperately-worded correspondence at some point during a career.

Third, the military judge's conduct at appellant's trial does not reflect any apparent bias against appellant. The military judge did not abuse his discretion in accepting appellant's guilty pleas. In doing so, he correctly described the defense of lack of mental responsibility and how issues relating to mental health might negate specific intent. He also properly prohibited the government from viewing the "long-form" R.C.M. 706 report inadvertently provided to them.

Appellant further argues that the military judge's earlier comments about 1LT EW and appellant's sentence of eight years confinement and a dishonorable discharge demonstrate an inflexible attitude about soldiers with mental health issues. We disagree. Although not dispositive, appellant offered and the convening authority accepted a pretrial agreement with an eight-year cap on confinement. An accused's own sentence proposal can indicate its probable fairness to him. *See United States v. Hendon*, 6 M.J. 171, 175 (C.M.A. 1979). The adjudged sentence was considerably lower than the government's request for twelve years confinement. Further, given that the military judge's 2007 comments were made before he was a judge, were not directed at a party in this case, and considering his legally correct actions at trial regarding mental health issues, we are convinced that the adjudged sentence is not evidence of apparent bias under R.C.M. 902(a).[5]

*Unreasonable Multiplication of Charges*

Appellant alleges his two convictions under Article 134, UCMJ constitute an unreasonable multiplication of charges with his four aggravated assault convictions under Article 128, UCMJ. We agree in part. Appellant pleaded guilty, among other offenses, to 1) committing an aggravated assault by shooting at SGT KL with a loaded firearm, a dangerous weapon likely to produce death or grievous bodily harm under Article 128, UCMJ (Specification 1 of Charge II), and 2) wrongfully and wantonly shooting at SGT KL with a pistol, in violation of Clauses 1 and 2 of Article 134, UCMJ (Specification 3 of Charge III). The conduct charged in these specifications arises from the same incident. We are convinced Specification 3 of Charge III is an unreasonable multiplication of charges with appellant's aggravated assault of SGT KL. R.C.M. 307(c)(4). This error does not affect the sentence because the military judge merged that Article 134 offense with the Article 128 offenses for sentencing purposes.

Appellant further argues his conviction for wrongfully and willfully discharging a pistol from the window of his apartment building under such circumstances as to endanger human life, in violation of Clauses 1 and 2 of Article

---

[5] Appellant notes the military judge incorrectly stated appellant served two deployments instead of three. Based upon the entire record, we are convinced the military judge misspoke rather than being biased against appellant.

7

134, UCMJ (Specification 2 of Charge III) constitutes an unreasonable multiplication of charges with his four aggravated assault convictions. We disagree. While those offenses address similar criminal law interests, those interests are not coterminous. Appellant admitted he fired his pistol in a housing area and stipulated that one bullet struck a residence on the opposite side of the street. This conduct goes beyond shooting at four people, and the government reasonably charged it as such.

*Dilatory Post-Trial Processing*

The convening authority took action 409 days after the sentence was adjudged, with 24 days of delay attributable to the defense. The record in this case consists of three volumes, and the trial transcript is 163 pages. Although we find no due process violation in the post-trial processing of appellant's case, we must still review the appropriateness of the sentence in light of the unjustified dilatory post-trial processing. UCMJ art. 66(c); *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002) ("[Pursuant to Article 66(c), UCMJ, service courts are] required to determine what findings and sentence 'should be approved,' based on all the facts and circumstances reflected in the record, including the unexplained and unreasonable post-trial delay."); *see generally United States v. Toohey*, 63 M.J. 353, 362-63 (C.A.A.F. 2006); *United States v. Ney*, 68 M.J. 613, 617 (Army Ct. Crim. App. 2010); *United States v. Collazo*, 53 M.J. 721, 727 (Army Ct. Crim. App. 2000).

It took 225 days to transcribe the record in this case. The government attached to the record a memorandum explaining much of the delay, including a shortage of court reporters, sub-standard work product from a civilian court-reporter company, and extensive postal delays mailing matters to a defense counsel in Kuwait and the military judge in the continental United States. Despite this explanation, relief from this court in this case is appropriate as the delay between announcement of sentence and action could "adversely affect the public's perception of the fairness and integrity of military justice system . . . ." *Ney*, 68 M.J. at 617. We provide relief in our decretal paragraph.

**CONCLUSION**

Upon consideration of the entire record, the finding of guilty of Specification 3 of Charge III is set aside and that specification is dismissed. The remaining findings of guilty are AFFIRMED. Given the dilatory post-trial processing, we affirm only so much of the sentence as extends to a dishonorable discharge, confinement for seven years and ten months, forfeiture of all pay and allowances, and reduction to the grade of E-1. All rights, privileges, and property, of which appellant has been deprived by virtue of this decision setting aside portions of the findings are ordered restored.

CARLSON —ARMY 20130129

Senior Judge TOZZI and Judge CELTNIEKS concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

9