# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before the Court Sitting En Banc

**UNITED STATES, Appellee**

v.

**Staff Sergeant TONY S. SPRINGER**
**United States Army, Appellant**

ARMY 20170662

Headquarters, United States Army Maneuver Center of Excellence
Richard J. Henry, Military Judge
Lieutenant Colonel David H. Drake, Acting Staff Judge Advocate

For Appellant: Lieutenant Colonel Tiffany D. Pond, JA; Major Angela D. Swilley, JA; Captain Rachele A. Adkins, JA (on brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Craig Schapira, JA; Captain Brian Jones, JA (on brief).

22 January 2020

---------------------------------------------------------
OPINION OF THE COURT ON REMAND
---------------------------------------------------------

SCHASBERGER, Judge:

At the time of appellant's court-martial, the presiding military judge engaged in an inappropriate relationship with the wife of one of the prosecuting attorneys assigned to appellant's case. This inappropriate relationship created the appearance that the military judge lacked impartiality in appellant's court-martial. Under the circumstances of this case, we are compelled to set aside the findings of guilt and sentence and authorize a rehearing.[1]

This is our second time reviewing this case under Article 66, UCMJ. In our first review, we summarily affirmed the findings and sentence. *United States v. Springer*, ARMY 20170662 (Army Ct. Crim. App. 31 Jan. 2019) (dec.). Appellant then sought review by the Court of Appeals for the Armed Forces (CAAF), which

---

[1] In early December 2017, an enlisted panel sitting as a general court-martial convicted Staff Sergeant (SSG) Springer, contrary to his pleas, of two specifications of assault consummated by a battery in violation of Article 128, Uniform Code of Military Justice, 10 U.S.C. § 928 [UCMJ]. The convening authority approved appellant's adjudged sentence of a bad-conduct discharge, confinement for ninety days, and reduction to the grade of E-4.

initially denied appellant's petition for a grant of review. *United States v. Springer*, 79 M.J. 69 (C.A.A.F. 2019) (order). Following the CAAF's denial, appellant received notice that his military judge, Lieutenant Colonel (LTC) Richard Henry, "was involved in an inappropriate relationship with the wife" of an attorney practicing before him. Specifically, an investigation found that LTC Henry engaged in an inappropriate relationship with Mrs. KC, the wife of Captain (CPT) AC, a judge advocate who practiced before LTC Henry as a trial counsel and later became a defense counsel in the same judicial circuit. With this new information, appellant asked the CAAF to reconsider its denial of his petition for grant of review. The CAAF ultimately granted appellant's requested reconsideration, vacated its prior denial, granted the petition for review, and remanded the case to this court. *United States v. Springer*, 79 M.J. 138 (C.A.A.F. 2019) (order). The CAAF directed this court to consider the following issue:

> WHETHER THE MILITARY JUDGE ERRED BY FAILING TO RECUSE HIMSELF BASED ON CIRCUMSTANCES THAT, IF KNOWN AT THE TIME OF APPELLANT'S COURT-MARTIAL, WOULD HAVE PROVIDED REASONS TO REASONABLY QUESTION HIS IMPARTIALITY.[2]

## BACKGROUND[3]

The Judge Advocate General of the Army designated LTC Henry as a military judge on 16 April 2015. In the summer of 2016, the Army assigned him to Fort Benning, Georgia, where he served as a military judge until his removal in April 2018. Lieutenant Colonel Henry was married at all times relevant to this case.

---

[2] Our review and discussion of the facts and circumstances surrounding appellant's convictions is limited to those facts and circumstances necessary to resolve the issue remanded by our superior court.

[3] Previously in this case, we took judicial notice of various items related to LTC Henry's relationship with Mrs. KC, which are located in two records of trial from another court-martial, *United States v. Rudometkin*, ARMY 20180058, and *United States v. Rudometkin*, ARMY MISC 20180675. *See United States v. Springer*, ARMY 20170662 (Army Ct. Crim. App. 24 Oct. 2019) (order). Three items are particularly relevant to this decision: (1) App. Ex. LXXIX, *United States v. Rudometkin*, ARMY 20180058 (military judge's findings of fact and conclusions of law concerning LTC Henry's inappropriate relationship); (2) transcript pages 1403-1541, *United States v. Rudometkin*, ARMY 20180058 (Article 39(a), UCMJ, post-trial hearing related to LTC Henry's relationship with Mrs. KC); and (3) Def. App. C., *United States v. Rudometkin*, ARMY MISC 20180675 (Army administrative investigation into LTC Henry's relationship with Mrs. KC).

2

Beginning in the summer of 2016, CPT AC served as a trial counsel in the Office of the Staff Judge Advocate, Fort Benning, Georgia. In this capacity, he practiced as a prosecutor in front of LTC Henry. At all times relevant to this case, CPT AC was married to Mrs. KC.

Mrs. KC met LTC Henry's wife in the summer of 2016. Mrs. KC first met LTC Henry in October 2016 at a Halloween party hosted by the Office of the Staff Judge Advocate. As the party was crowded, Mrs. KC, LTC Henry, and LTC Henry's wife spent most of the evening talking in a bedroom. After the party, LTC Henry sent Mrs. KC a message via Facebook messenger thanking her for hanging out in "the introvert room." Mrs. KC was unaware of how to use Facebook messenger, so CPT AC alerted her to the message. Thus began a frequent exchange of messages between Mrs. KC and LTC Henry, to whom she referred to as "RJ." In their messages, they discussed personal issues such as children, family, work, and marriage, as well as "non[-]personal issues." Over time, they developed a deep friendship. Mrs. KC shared things with LTC Henry that she only shared with one other longtime friend.

On 19 May 2017, LTC Henry presided over the initial Article 39(a), UCMJ, session and the arraignment at appellant's court-martial. Captain AC appeared as the trial counsel. Lieutenant Colonel Henry stated on the record that he was not aware of any matter that might be a ground for challenging him as the presiding judge. Neither the prosecution nor the defense challenged LTC Henry. Lieutenant Colonel Henry later presided over appellant's motions hearing on 7 July 2017 and his trial on the merits, which began on 5 December 2017. At no time did LTC Henry disclose his relationship with Mrs. KC as a possible ground for challenge.

Over the summer of 2017, Mrs. KC's relationship with LTC Henry grew closer. At the Fort Benning staff judge advocate's farewell party, LTC Henry's wife introduced CPT AC as "her husband's best friend's husband." Captain AC was not aware that his wife was that close to LTC Henry. Later in the summer, Mrs. KC invited LTC Henry and his wife to dinner at her house. Captain AC elected not to attend after consulting with the Fort Benning chief of justice about concerns over attending such a dinner. Lieutenant Colonel Henry, his wife, and their daughter eventually went to dinner at Mrs. KC's house in November 2017, while CPT AC was away on temporary duty (TDY).

By December of 2017, LTC Henry and Mrs. KC were interacting on an increasingly frequent basis. According to CPT AC, he began to notice his wife was engaging in what he deemed to be suspicious behavior. The first time he noticed this behavior was during appellant's trial, which Mrs. KC attended. The trial on the merits began on 5 December 2017; LTC Henry remained the presiding judge and CPT AC remained the lead prosecutor. The members began their deliberations on findings on 8 December 2017. While the members deliberated on findings, Mrs. KC

spent over an hour in LTC Henry's chambers. The door remained open during this visit.

Captain AC also noticed the frequency of the texting between LTC Henry and Mrs. KC increased in December. The texting would occur at all hours, to include well into the night after CPT AC and Mrs. KC retired to bed. When CPT AC inquired about the texting, Mrs. KC stated that the messages were private and that "she had promised LTC Henry that she wouldn't reveal what he told her." Mrs. KC also related to CPT AC that these messages were supposed to be secret from both CPT AC and LTC Henry's wife. Of the messages CPT AC did observe, LTC Henry stated "I'm glad I finally found somebody I can talk to" and "goodnight my bestie." For Christmas 2017, Mrs. KC purchased a book for both LTC Henry and his wife. They, in turn, gifted Mrs. KC "sprinkles for cupcakes as part of an inside joke."

In January 2018, Captain AC transitioned from his position as trial counsel to a defense counsel position at Fort Benning. During that same month, the interactions between LTC Henry and Mrs. KC continued to increase. Lieutenant Colonel Henry and Mrs. KC began attending yoga classes together on Saturday mornings. This later increased to include one or two weekday sessions. Often, they would spend time after these sessions at restaurants. In February 2018, LTC Henry invited Mrs. KC to use the Fort Benning courthouse deliberation room to study for her master's degree. Mrs. KC began using the deliberation room on Sunday afternoons and occasionally during weeknights. On these occasions, LTC Henry would meet Mrs. KC at the courthouse to let her in.

From December 2017 through March 2018, CPT AC's concerns about the relationship between LTC Henry and Mrs. KC grew steadily. This was fueled by the frequency of the contacts between LTC Henry and Mrs. KC, and Mrs. KC's increasing secrecy and apparent dishonesty concerning her interactions with LTC Henry. Captain AC's concerns came to a head on 4 April 2018, after Mrs. KC misled him concerning a meeting at a park with LTC Henry. Captain AC accused Mrs. KC of having an affair with LTC Henry. Captain AC asked Mrs. KC to show him the messages she had exchanged with LTC Henry. Mrs. KC, instead, deleted all of the messages from her phone "because they contain[ed] information [CPT AC] should not know as [an attorney] practicing before [LTC Henry]," and because the messages contained "personal matters" that LTC Henry requested remain "confidential."

On 6 April 2018, CPT AC contacted his state bar ethics hotline for advice on his duty to report LTC Henry's conduct to his technical chain of command. The state bar representative advised CPT AC that he had a duty to report the conduct, advice later echoed by a longtime friend of CPT AC. Taking this advice, CPT AC reported his concerns to his chain of command.

Following CPT AC's report, LTC Henry was removed from the bench on 8 April 2018. Thereafter, the then Commander of the United States Army Legal Services Agency, Brigadier General Joseph B. Berger, III, appointed Colonel (COL) DR to conduct an investigation of LTC Henry pursuant to Army Reg. 15-6, Boards, Commissions, and Committees: Procedures for Administrative Investigations and Boards of Officers (1 Apr. 2016) [AR 15-6]. The investigating officer concluded that LTC Henry engaged in "a personal and emotionally intimate relationship with Mrs. [KC] between December 2017-April 2018."

## LAW AND DISCUSSION

"When an appellant, as in this case, does not raise the issue of disqualification until appeal, we examine the claim under the plain error standard of review." *United States v. Martinez*, 70 M.J. 154, 157 (C.A.A.F. 2011) (citing *United States v. Jones*, 55 M.J. 317, 320 (C.A.A.F. 2001)). "Plain error occurs when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice." *Id.* (citing *United States v. Maynard*, 66 M.J. 242, 244 (C.A.A.F. 2008)).

"An accused has a constitutional right to an impartial judge." *United States v. Butcher*, 56 M.J. 87, 90 (C.A.A.F. 2001) (citations and internal quotation marks omitted). In furtherance of this right, the President promulgated Rule for Courts-Martial (R.C.M.) 902, which provides the framework for when a military judge must be disqualified from participating in a court-martial. Rule for Courts-Martial 902(a)-(b) establishes grounds for disqualification when a military judge is either actually biased or conflicted based on some specific grounds, or when the military judge appears to lack impartiality under all the facts and circumstances. *See also Martinez*, 70 M.J. at 157. Here, we focus on the military judge's appearance of impartiality.

"[A] military judge *shall* disqualify himself or herself in any proceeding in which that military judge's impartiality might reasonably be questioned." R.C.M. 902(a) (emphasis added). In some cases, a military judge may accept a waiver as to his disqualification if there is a "full disclosure on the record of the basis for disqualification." R.C.M. 902(e). Here, LTC Henry never disclosed a basis for disqualification, so no waiver exists.

To determine if a military judge should disqualify himself, "the test is whether, taken as a whole in the context of this trial, a court-martial's legality, fairness, and impartiality were put into doubt" by the military judge's actions. *United States v. Burton*, 52 M.J. 223, 226 (C.A.A.F. 2000) (citations and internal quotation marks omitted). When conducting this test, we apply an objective standard of "any conduct that would lead a reasonable man knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be

questioned." *United States v. Kincheloe*, 14 M.J. 40, 50 (C.M.A. 1982) (citations and internal quotation marks omitted).

If we determine the military judge should have disqualified himself, we then analyze the facts to determine if the error was harmless. "In a plain error context we look to see if the error materially prejudiced the substantial rights of the appellant" pursuant to Article 59(a), UCMJ. *Martinez*, 70 M.J. at 159.

Even absent material prejudice to a substantial right pursuant to Article 59(a), UCMJ, a judge's failure to disqualify himself may still require a remedy after applying the test laid out in *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 862-64 (1988). *Id.* In *Liljeberg*, the Supreme Court considered three factors in determining "whether a judgment should be vacated" based on a judge's appearance of partiality: "[1] the risk of injustice to the parties in the particular case, [2] the risk that the denial of relief will produce injustice in other cases, and [3] the risk of undermining the public's confidence in the judicial process." 486 U.S. at 864. The CAAF applies the same three-part test in analyzing cases involving a military judge's appearance of partiality pursuant to R.C.M. 902(a). *See United States v. Quintanilla*, 56 M.J. 37, 45 (C.A.A.F. 2001).

We therefore ask ourselves whether a reasonable person, knowing all the circumstances, would question LTC Henry's impartiality and, if so, is a remedy required? For the reasons set out below we answer both in the affirmative.

Appellant was arraigned in May of 2017. It was at this initial hearing that LTC Henry stated he knew of no grounds that would disqualify him. Regardless of precisely when LTC Henry's relationship with Mrs. KC rose to the level of being grounds for disqualification, the relationship had certainly reached that level for the trial on the merits in December. There is ample evidence that over the summer of 2017, LTC Henry had developed a close friendship with Mrs. KC. The increase in emails, text messages, and Facebook posts raises questions of impropriety and impartiality. There is no question that having the prosecutor's wife visit with the military judge in private while the panel was deliberating is a serious departure from the conduct expected of a military judge. It is clear that a reasonable person might conclude the military judge was not impartial considering that he and the wife of the prosecuting attorney texted at all hours of the night, visited with each other in the courthouse and elsewhere, including during jury deliberations in appellant's case, and were described as best friends.

The evidence indicates LTC Henry himself likely understood the consequences of his relationship with Mrs. KC. On various occasions, CPT AC approached Mrs. KC about the content of her messages with LTC Henry. Rather than reveal the content, Mrs. KC responded that LTC Henry told her it was

inappropriate for her to share the contents of their messages with CPT AC, an attorney practicing before LTC Henry.

We therefore find that at the time of the trial on the merits in December 2017, LTC Henry was certainly disqualified under R.C.M. 902(a) and needed to either recuse himself or disclose the full details of his relationship with Mrs. KC and determine if the parties waived his disqualification. Failing to recuse himself or make such a disclosure was error.

Finding error, we now test for harmlessness. We do not find that appellant suffered material prejudice to a substantial right. We have not identified any rulings or decisions in appellant's case that appear to spring from LTC Henry's failure to disqualify himself or disclose his relationship with Mrs. KC. However, finding that the military judge's error was harmless pursuant to Article 59(a), UCMJ, does not end our analysis. *See Martinez*, 70 M.J. at 159. Even absent specific prejudice, we must apply the three-prong test outlined in *Liljeberg* to determine if a remedy is required to cure the error. *Id*.

We will not focus on the first two *Liljeberg* prongs—that is the risk of injustice to the parties and the risk that the denial of relief will produce injustice in other cases—because under the facts of this case, the third prong is dispositive. We conclude that failing to remedy the error in this case would undermine the public's confidence in the judicial process.

The analysis for the third prong of the *Liljeberg* test is similar, but not identical, to the standard which we applied in our R.C.M. 902(a) analysis. *See Martinez*, 70 M.J. at 160. The third prong is still an objective test based on what a reasonable member of the public might think, but it is more expansive than the R.C.M. 902(a) analysis. Specifically, under *Liljeberg*, we review the entire proceedings, including post-trial and appellate proceedings. *Id*. There may be times when we apply *Liljeberg* and conclude the military judge should have disqualified himself or herself under R.C.M. 902(a), but can say with certainty that a reasonable person knowing the entire record would have confidence in the judicial process. This is not such a case.

The record here substantiates inappropriate behavior by LTC Henry. Judicial misconduct with the spouse of a party to the case during trial erodes public confidence in the judiciary and the military justice system. Here, beyond having "a personal and emotionally intimate" relationship with Mrs. KC outside of the courtroom, Mrs. KC also spent over an hour privately with LTC Henry in his chambers during the panel's deliberation on findings. Given this evidence, the government on appeal rightly concedes that "LTC Henry's relationship with [Mrs. KC] poses a risk of undermining public confidence in the military justice system."

7

Accordingly, the only way to remedy LTC Henry's failure to disqualify himself in this case is to set aside the findings and the sentence and authorize a rehearing.

## CONCLUSION

The findings and sentence are SET ASIDE. A rehearing may be ordered by the same or different convening authority.

Chief Judge ESCALLIER, Senior Judge BURTON, Senior Judge ALDYKIEWICZ, Senior Judge BROOKHART, Judge SALUSSOLIA, Judge RODRIGUEZ, Judge FLEMING, and Judge WALKER concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court