**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Staff Sergeant NICHOLAS A. R. MARSH**
**United States Air Force**

**ACM 38688**

**19 April 2016**

Sentence adjudged 22 February 2014 by GCM convened at Offutt Air Force Base, Nebraska. Military Judge: Natalie D. Richardson.

Approved Sentence: Bad-conduct discharge, confinement for 21 days, forfeiture of all pay and allowances, and reduction to E-1.

Appellate Counsel for Appellant: Captain Annie W. Morgan.

Appellate Counsel for the United States: Major J. Ronald Steelman III and Gerald R. Bruce, Esquire.

Before

MITCHELL, BROWN, and DUBRISKE
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

Brown, Judge:

At a general court-martial composed of officer and enlisted members, Appellant was found guilty, in accordance with his pleas, of seven specifications of violating a lawful general regulation prohibiting a recruiter from attempting to develop and maintain a personal and intimate relationship with an applicant, one specification of violating a lawful general regulation by storing offensive material on a government computer, and one specification of making a false official statement, in violation of Articles 92 and 107,

UCMJ, 10 U.S.C. §§ 892, 907.[1]  The members sentenced Appellant to a bad-conduct discharge, confinement for 21 days, forfeiture of all pay and allowances, and reduction to E-1.  The convening authority approved the sentence as adjudged.

On appeal, Appellant raises six issues:  (1) that Appellant's guilty plea to violating an Air Education and Training Command instruction prohibiting a recruiter from attempting to develop personal relationships with applicants was not provident because the instruction was not punitive; (2) that the military judged erred by not sua sponte recusing herself; (3) that the military judge abused her discretion by not sua sponte allowing counsel to voir dire the members between findings and sentencing; (4) that the judge erred in instructing the members to disregard all evidence presented in findings based on a not guilty verdict as to those offenses; (5) that the staff judge advocate's recommendation (SJAR) failed to provide accurate and proper advice regarding Appellant's character of service; and (6) that Appellant is entitled to relief due to delays in post-trial processing.[2] We disagree with the first five averments, but find merit in the post-trial processing claim.  Consequently, we hold the Government violated post-trial processing standards, warranting some sentencing relief.  We affirm the finding and sentence, as reassessed.

*Background*

Appellant was an Air Force recruiter.  In May 2012, a parent of one of Appellant's applicants submitted a complaint to Air Force authorities about Appellant's relationship with their daughter.  This initiated an investigation of Appellant that uncovered he had, between March 2011 and May 2012, engaged in unprofessional relationships with seven different applicants in violation of paragraph 4.5.3 of Air Education and Training Command Instruction (AETCI) 36-2909, *Professional and Unprofessional Relationships* (2 March 2007).  The unprofessional relationships consisted of inappropriate electronic communications; requesting nude and semi-nude pictures from some of the applicants; having personal and intimate discussions with the applicants, unrelated to his duties as a recruiter; and, on one occasion, engaging in consensual sexual activity with an applicant at Appellant's office.  When Appellant was questioned by investigators about his conduct with applicants, he lied about whether he had previously touched an applicant in an unprofessional manner.  This resulted in the false official statement offense.  A later search of Appellant's government computer also uncovered sexually explicit images of Appellant and others, to include some applicants.  This resulted in the violation of a lawful general regulation offense by storing offensive material on a government computer.

---

[1] Appellant was acquitted of nine specifications of violating an instruction prohibiting recruiters from establishing personal relationships with applicants, recruits, and personnel assigned to the Recruiter Assistance Program.
[2] The first and second issues were raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

*Providence of Plea*

Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), Appellant argues that his guilty pleas to violating paragraph 4.5.3 of AETCI 36-2909, by engaging in unprofessional relationships with applicants, was improvident because the instruction was not a punitive instruction. In pleading guilty, Appellant specifically told the military judge that he believed that the instruction was punitive. On appeal, however, Appellant asserts that he was incorrect in believing that the instruction was punitive and that, as a matter of law, the provision was not punitive. Specifically, Appellant argues that the instruction does not comply with the administrative requirements of Air Force Instruction 33-360, ¶ 2.17.1, *Publications and Forms Management* (18 May 2006), and that, therefore, AETCI 36-2909 is not a punitive instruction.

Pure questions of law arising from a guilty plea are reviewed de novo. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). Rejection of a guilty plea requires that the record show a substantial basis for questioning the providence of the plea. *Id.*; *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991).

In *United States v. LeBlanc*, 74 M.J. 650 (A.F. Ct. Crim. App. 2015), we considered and explicitly rejected the argument that AETCI 36-2909 is not a punitive instruction. We again reject this argument for the reasons set forth in *LeBlanc*.

*Military Judge Recusal*

Pursuant to *Grostefon*, Appellant argues for the first time on appeal that the military judge should have sua sponte recused herself from presiding over this court-martial. Appellant asserts the military judge took a hostile tone toward his civilian defense counsel, especially when compared to her discussions with the trial counsel. Appellant bases his assertion on the military judge electing to hold his civilian defense counsel in contempt, while not taking a similar action against the trial counsel. At no point during the proceedings did Appellant request to voir dire the military judge or request that the military judge recuse herself.

Military judges must disqualify themselves if their "impartiality might reasonably be questioned," or if they have "a personal bias or prejudice concerning a party or personal knowledge of disputed evidentiary facts." Rules for Courts-Martial (R.C.M.) 902(a) and (b)(1). While a military judge's decision on recusal is reviewed for abuse of discretion where it is raised by an appellant at trial, when an appellant does not raise the issue until appeal, it is reviewed under the plain error standard. *United States v. Martinez*, 70 M.J. 154, 157 (C.A.A.F. 2011). "Plain error occurs when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice." *Id.*

"[W]hen a military judge's impartiality is challenged on appeal, the test is whether, taken as a whole in the context of this trial, a court-martial's legality, fairness, and impartiality were put into doubt by the military judge's [actions]." *United States v. Burton*, 52 M.J. 223, 226 (C.A.A.F. 2000) (citation and quotation marks omitted). The appearance of impartiality is reviewed objectively; that is, "[a]ny conduct that would lead a reasonable man knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned is a basis for the judge's disqualification." *United States v. Kincheloe*, 14 M.J. 40, 50 (C.M.A. 1982) (citation and internal quotation marks omitted).

As Appellant's contention relies on his perception that the military judge was inconsistent in how she responded to the failures of Government counsel and Defense counsel to comply with deadlines established by the military judge during trial, it is helpful to briefly discuss the military judge's actions toward each party.

Turning first to the Government, the military judge concluded that the Government failed to provide timely discovery to the Defense. At arraignment, the military judge granted the Defense a continuance because of outstanding discovery. Later at trial, the military judge specifically found that the trial counsel *negligently* failed to provide necessary discovery to the Defense in a timely manner and that there was poor communication between the Government and Defense counsel. Nevertheless, as the Defense had the necessary discovery prior to trial, the military judge provided no additional relief for discovery violations beyond the initial continuance.

As to the Defense, the civilian defense counsel repeatedly failed to submit motions in a timely manner. The military judge initially set a deadline for motions to be filed on 7 January 2014. After granting the Defense's request for a continuance, the military judge provided a new deadline of 20 January 2014 for counsel to provide a detailed notice of all anticipated motions. On 31 January 2014, the Defense submitted a motion to suppress. Although specifically noting that the Defense was derelict in missing the motions deadlines, the military judge considered and granted the motion to suppress. The civilian defense counsel subsequently apologized to the court for his untimeliness in submitting motions to the court.

This was not, however, the last untimely motion that the civilian defense counsel would submit. After Appellant pleaded guilty to some of the alleged misconduct, the Government attempted to prove up the remaining offenses involving violations of a general regulation. After the Government rested, the civilian defense counsel made several motions, to include challenging the wording of the specifications and arguing that the duties imposed by the regulation were unconstitutionally vague.

There was nothing apparent in either of these motions that suggested why the Defense was unable to provide earlier notice to the court. When asked about this by the military judge, the civilian defense counsel responded that he did not comply with the

deadlines because he believed that doing so would be harmful to Appellant by providing the Government an opportunity to remedy the error. Despite the untimeliness, the military judge again elected to consider the Defense motions and granted, in part, one of the motions alleging a defective specification.

Nevertheless, while the members were later deliberating on the sentence, the military judge held the civilian defense counsel in contempt and explained that the reason for this was that the civilian defense counsel *willfully* violated her order. Though finding the civilian defense counsel in contempt, she imposed no punishment. In doing so, she explained that she considered the Government's behavior in dealing with discovery and that she did not believe the Government's actions rose to the level of contempt.

The military judge did not err in failing to sua sponte recuse herself. The military judge explained, and the record supported, why the military judge elected to pursue contempt proceedings against the civilian defense counsel but not the trial counsel. Unlike the trial counsel, the civilian defense counsel's actions were an intentional defiance of the military judge's deadlines. In addition, although civilian defense counsel was previously warned by the military judge about submitting untimely motions, this warning failed to deter counsel's intentional conduct. In contrast, the Government's initial failure to provide required discovery was found to be an unintentional oversight.

Despite the intentional defiance of the military judge's scheduling order, the military judge also took pains to address it in a fashion that would not adversely impact Appellant. The military judge considered all motions regardless of timeliness, and granted several untimely Defense motions. Other than a purported instructional error discussed below, Appellant does not challenge the denial of any motions he raised at trial.

The military judge also chose to delay any discussion of a contempt hearing until the members were in deliberation for sentence. The contempt hearing was the last substantive discussion on the record prior to the announcement of the sentence.[3] This separated the contempt discussion from the merits of Appellant's case. Appellant was not prejudiced in any manner by the military judge's determination to hold civilian defense counsel in contempt, at the end of the trial, for an intentional defiance of the military judge's deadline for motions. Furthermore, it is also significant that the civilian defense counsel did not request that the military judge recuse herself. *See United States v. Cooper*, 51 M.J. 247, 250 (C.A.A.F. 1999) (failing to move to disqualify the military judge strongly suggested that the defense did not believe that the military judge lost impartiality or the appearance of impartiality). Nothing with the military judge's actions suggested a bias against the Defense or, alternatively, partiality toward the Government.

_____

[3] The contempt hearing appears to have occurred after the civilian defense counsel's last substantive actions in this case. Appellant's military defense counsel submitted a letter supporting Appellant's clemency request. Nothing in Appellant's clemency suggested dissatisfaction with his civilian defense counsel.

After reviewing the record of trial in its entirety, this court is convinced that the court-martial's legality, fairness, and impartiality were not put into doubt by the military judge's actions and the military judge did not err by failing to sua sponte recuse herself.[4]

*Sua Sponte Excusal of Member for Cause*

The parties have the right to challenge court members for cause. Article 41(a)(1), UCMJ, 10 U.S.C. §841(a)(1). "A member shall be excused for cause whenever it appears that the member . . . [s]hould not sit as a member in the interest of having a court-martial free from substantial doubt as to legality, fairness, and impartiality." R.C.M. 912(f)(1)(N). A party may challenge a member for cause "during trial when it becomes apparent that a ground for challenge may exist," and a hearing may be held to resolve the issue. R.C.M. 912(f)(2)(B).

The military judge "*may*, in the interest of justice, excuse a member against whom a challenge for cause would lie." R.C.M. 912(f)(4) (emphasis added). "A military judge has the discretionary authority to sua sponte excuse the member but has no duty to do so." *United States v. McFadden*, 74 M.J. 87, 90 (C.A.A.F. 2015). The discretionary authority of a military judge to excuse a member sua sponte "in the interest of justice" is a "drastic action." *United States v. Velez*, 48 M.J. 220, 225 (C.A.A.F. 1998) (quoting R.C.M. 912(f)(4)). "The judge's decision whether or not to excuse a member sua sponte is subsequently reviewed for an abuse of discretion." *United States v. Strand*, 59 M.J. 455, 458 (C.A.A.F. 2004); *see also United States v. Akbar*, 74 M.J. 364, 395 (C.A.A.F. 2015) (explaining why the military judge did not abuse his discretionary authority to sua sponte remove members).

After the panel acquitted Appellant of all the litigated specifications, the military judge informed the panel that they would proceed to the sentencing phase of trial for the offenses to which Appellant previously pleaded guilty. In so doing, the military judge instructed the members that the evidence and testimony presented in findings were not a part of the sentencing proceeding and should be disregarded by them unless that same evidence was again presented in the sentencing portion of the trial.

The president of the panel asked the military judge why a new panel would not be impaneled for sentencing. After the military judge explained to the member that it was permissible to proceed with the same panel, the member confirmed that he could follow the military judge's instruction to disregard the evidence presented in findings. The military judge then asked the entire panel if they could follow the military judge's

---

[4] Although we reviewed this allegation of error under the plain error standard, rather than an abuse of discretion standard, we conclude that the military judge's failure to sua sponte recuse herself was not error under either standard of review. *Compare United States v. Burton*, 52 M.J. 223, 226 (C.A.A.F. 2000) (applying an abuse of discretion standard) *with United States v. Martinez*, 70 M.J. 154, 157 (C.A.A.F. 2011) (applying plain error standard).

instruction and they all said that they could.  The Defense did not request that the military judge voir dire the members further and did not challenge any of the members for cause.

Although the panel member questioned the military judge about the process, he never expressed any concern about an inability to follow the military judge's instruction.  Once he learned that they would effectively be starting over in sentencing, to include receiving additional evidence and testimony, the member responded that the military judge answered his question, he understood the instruction, and he would be able to follow that instruction.  Furthermore, the military judge performed a limited voir dire of not only the member who asked the question, but all of the members.  She was satisfied that they understood her instruction and would follow it.

Appellant further argues on appeal that the military judge should have allowed counsel to supplement her examination of the members to determine whether there was any bias or impartiality.  The military judge, however, did not prohibit such an inquiry, and the Government and Defense, after personally observing the member and the military judge's response to the member's question, apparently determined that further questioning was not necessary and declined to request additional voir dire.  A review of the record supports that conclusion.

We are convinced that the military judge did not abuse her discretion in failing to sua sponte excuse the president of the panel.

*Military Judge's Control over Presentation of Evidence*

As previously discussed, the military judge instructed the members that they should disregard all evidence and testimony presented during findings that was not reintroduced during sentencing.  Appellant asserts that this instruction was error, and the members should have been instructed that they could consider mitigating evidence offered during the findings portion of the trial.  Specifically, Appellant now points to testimony from a noncommissioned officer (NCO) during findings, concerning the institutional pressures placed on recruiters and Appellant's receipt of an annual award for exceeding his quota of new recruits, as evidence from findings that the members should have been able to consider as mitigating evidence in sentencing.

It is the military judge's duty to properly instruct the members at trial.  *See United States v. Quintanilla*, 56 M.J. 37, 83 (C.A.A.F. 2001).  A military judge's decision to provide an instruction is reviewed for an abuse of discretion.  *United States v. Maxwell*, 45 M.J. 406, 424 (C.A.A.F. 1996).  However, "[t]he propriety of the instructions given by a military judge is reviewed de novo."  *Quintilla*, 56 M.J. at 83.  In examining instructions provided by the military judge, an appellate court examines "whether the instruction as a whole provides meaningful legal principles for the court-martial's consideration."  *United States v. Truman*, 42 C.M.R. 106, 109 (C.M.A. 1970).  "The military judge has

considerable discretion in tailoring instructions to the evidence and law. *United States v. Hopkins*, 56 M.J. 393, 395 (C.A.A.F. 2002).

Although Appellant did not object to the military judge's instruction when initially given to the members, the Defense later approached the military judge during a recess to ask that the members be instructed that they may consider any mitigating evidence provided by a defense witness during findings. This discussion was later summarized during an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session as follows:

> Counsel came to me . . . over the break; defense was asking if I would allow the members to consider the mitigating aspects of Sergeant [TC's] testimony. That sounded like a very bad idea to me for a few reasons; maybe just bad idea, not very bad. And the reasons I gave at the 802 was [sic], one, the government hadn't had an opportunity to cross-examine the witness on—on sentencing matters. But, even if the government didn't object, I've told the members to disregard everything that they heard in sentencing [sic]; to brain dump; and to then tell them, "Well, you can actually pick and choose some things from findings, if you think it's, you know, mitigating for the accused;" no. That's—that's extremely difficult to do. And it's not fair to ask them to do it.

> So, if there's any mitigating evidence that—that came out during findings, counsel are welcome to attempt to introduce that during sentencing. As far as judicial economy, I don't have a big interest in—in judicial economy—for this case. But, certainly no . . . judicial economy outweighs the confusion it's going to cause to the members.[5]

The trial defense counsel and the trial counsel both agreed that this was an accurate summary of the out-of-court conference. We use our highly discretionary authority under Article 66(c), UCMJ, 10 U.S.C. § 866(c), to not apply forfeiture to this alleged error, as the military judge's on-the-record summary was sufficient to preserve both Appellant's objection and the military judge's ruling as to that objection. *Cf. United States v. Butcher*,

---

[5] Rule for Courts-Martial (R.C.M.) 802 permits a military judge to conduct conferences with the parties to promote a fair and expeditious trial. The purpose of these discussions is to inform the military judge of anticipated issues, scheduling difficulties, administrative matters, and to provide an opportunity for efficient resolution of issues where the parties agree. R.C.M. 802(a), Discussion. The Discussion to R.C.M. 802 cautions, however, that these out-of-court conferences should not be used to litigate or decide contested issues. *Id.* As the military judge never inquired on the record whether Appellant consented to this resolution, it appears that the military judge may have used the R.C.M. 802 conference beyond that intended by the rule. We advise military judges to refrain from using R.C.M. 802 conferences for more than their intended purpose. This not only ensures that objections and rulings are preserved with clarity for later appellate review, but supports the transparency of the court-martial process.

56 M.J. 87, 93 (C.A.A.F. 2001) (noting that the service courts may use their Article 66(c), UCMJ, authority to determine whether a claim of unreasonable multiplication of charges had been waived or forfeited).

As an initial matter, the military judge's instruction and ruling did not preclude the Defense from providing the testimony of the NCO during sentencing or otherwise offering appropriate mitigating evidence in the sentencing phase of the trial. As the military judge clarified, the evidence in findings was only to be disregarded if it was not separately offered in sentencing. The military judge apparently concluded that, with the members' earlier questions about how the findings portion of the case related to the sentencing portion, re-advising the members that they could consider a small portion of the findings case would unnecessarily risk member confusion. She determined that any risk was avoidable since the Defense was permitted to re-offer any previously presented evidence they believed was also properly admissible in sentencing.

Nevertheless, despite the option to re-offer evidence, the Defense elected not to recall the witness during the sentencing phase of trial. In lieu of that approach, Appellant presented character letters from two other NCOs and one retired NCO regarding his work ethic and concern for others. In addition to the admission of Appellant's performance evaluations over an eleven-year span, Appellant also presented numerous decorations, accolades, and accomplishments that detailed his many successes during his military career. Regarding the institutional pressures placed on recruiters, Appellant elected to present those concerns to the members through both his unsworn statement and a statement from his spouse.

A military judge is ultimately responsible for control of the court and the trial proceedings. *United States v. Vargas*, 74 M.J. 1, 8 (C.A.A.F. 2014) (upholding a military judge's decision to deny a government-requested, one-day delay). The military judge controls the mode and order of interrogating witnesses and presenting evidence to reach the truth and avoid needless consumption of time. Mil. R. Evid. 611(a). Here, the military judge determined that, although re-presentation of sentencing evidence would take additional time, the alternative risked confusing the members as to what portions of the findings evidence they could consider in sentencing. In a situation such as this where there was an acquittal of all litigated specifications and any relevant evidence could be re-presented in sentencing at the discretion of Appellant, we find that the military judge did not abuse her discretion in controlling the mode and presentation of evidence in this manner. *Cf. United States v. Royster*, ACM 29875, unpub. op. at 18–20 (A.F.C.M.R. 18 October 1993) (recognizing a military judge's authority to control the presentation of evidence in a courtroom when, after a two-month delay, he permitted the members to refresh their recollection by reviewing a written transcript of that prior testimony rather than having it read to the members), *aff'd*, 42 M.J. 488 (C.A.A.F. 1995).

*SJAR error*

The SJAR in this case described the character of Appellant's prior service as "below average."[6]  Appellant and his counsel received a copy of the SJAR and responded pursuant to R.C.M. 1106(f)(4).  This provision authorizes counsel for an accused to "submit, in writing, corrections or rebuttal to any matter in the recommendation believed to be erroneous, inadequate, or misleading, and may comment on any other matter."  R.C.M. 1106(f)(4).  Appellant's trial defense counsel noted that, "[a]lthough the SJAR states that AB Marsh's service was below average, he served in the Air Force for many years without any issues."  The staff judge advocate (SJA), in the addendum to the SJAR, did not comment further on Appellant's prior service characterization or on trial defense counsel's comments regarding that characterization.

The trial defense counsel's letter and Appellant's other clemency matters were forwarded to the convening authority, along with an addendum to the SJAR.  This addendum referenced all the matters submitted by Appellant and advised the convening authority that he "must" consider them prior to taking action.  The convening authority also signed a memorandum stating that he did, in fact, consider all the matters attached to the SJAR prior to taking action on the case.  The convening authority approved the sentence as adjudged.

On appeal, Appellant alleges that the SJAR's characterization of his prior service constituted erroneous advice on a substantial matter of fact or law and that trial defense counsel's comment on the SJA's characterization of service constituted an allegation of legal error requiring additional comment by the SJA in the addendum.  We disagree.

We review de novo alleged errors in post-trial processing.  *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004).  The Court of Appeals for the Armed Forces has established the following process for resolving claims of error connected to post-trial review:  "First, an appellant must allege the error at the Court of Criminal Appeals.  Second, an appellant must allege prejudice as a result of the error.  Third, an appellant must show what he would do to resolve the error if given such an opportunity."  *United States v. Wheelus*, 49 M.J. 283, 288 (C.A.A.F. 1998).

We first consider whether the SJAR's characterization of Appellant's service record was error.  We do not find it was error.  While there may very well be differing views on how to best characterize Appellant's prior service, this constituted the SJA's opinion, and

---

[6] There is not a consensus as to the characterization of Appellant's prior service.  There were three separate preferrals of charges—on 18 June 2013, 12 August 2013, and 15 October 2013.  The first charges were preferred and forwarded by his then-commander, and the last two were preferred and forwarded by a successor commander.  Following the first preferral of charges, Appellant's then-commander submitted a transmittal letter to the special court-martial convening authority where he opined that Appellant's service prior to the date of the offenses was "satisfactory."  The next commander, however, in two subsequent transmittal letters to the special court-martial convening authority, described Appellant's service prior to the date of the offenses as "below average."

it was an opinion that was echoed by Appellant's commander when he twice opined to the special court-martial convening authority that he believed Appellant's service characterization prior to the charges was "below average."[7] Furthermore, even assuming error, Appellant had an opportunity to respond to the SJA's characterization and put it into the appropriate context. The Defense did so by highlighting for the convening authority that in Appellant's many years of service there were no issues.[8] Having "no issues" is a far cry from asserting that Appellant's prior service was exemplary. Regardless, the Defense had an opportunity to resolve this discrepancy and took advantage of that opportunity during clemency. As a consequence, the convening authority considered all required matters, to include Appellant's clemency submissions, in electing not to exercise his discretionary clemency authority.

We next consider whether the portion of the Defense's clemency submission that referenced Appellant's prior service characterization constituted an allegation of legal error requiring further comment in accordance with R.C.M. 1106(d)(4).[9] We have previously considered this issue, and we reach the same conclusion today. A statement of disagreement as to how to describe Appellant's service does not constitute a "legal error" that would require a comment from the SJA in the addendum to the SJAR. *See United States v. Caminiti*, ACM 34562, unpub. op. at 21–22 (A.F. Ct. Crim. App. 27 February 2003) (holding there was no legal error alleged where the SJAR described the appellant's prior service as "dishonorable" and the defense responded in clemency that it was misleading to describe the appellant's service in such terms).

*Post-trial Processing Delays*

In *United States v. Moreno*, our superior court established guidelines that trigger a presumption of unreasonable delay. 63 M.J. 129, 142 (C.A.A.F. 2006). This includes cases where action is not accomplished within 120 days of trial, as well as when the record of trial is not docketed with the service court within 30 days of the convening authority's action. *Id.*

Appellant asserts that we should grant him meaningful relief in light of the 149 days between the completion of trial and the convening authority's action (29 days beyond the standard) and the 92 days that elapsed between the convening authority's action and

---

[7] We need not decide whether a characterization of service that was wholly unsupported by the record would constitute error. In this case, there was a reasonable disagreement, whether Appellant's prior service was best described as below average or merely satisfactory. These descriptions were used, at different times, in the transmittal letters forwarding Appellant's charges to the special court-martial convening authority.

[8] We note that Appellant neither objected to the staff judge advocate's prior service characterization nor advocated for a different characterization. Nevertheless, it was clear from the tenor of the response that trial defense counsel believed that a "below average" characterization did not reflect Appellant's lack of disciplinary issues prior to the allegations in the case.

[9] R.C.M. 1106(d)(4) states, "[T]he staff judge advocate shall state whether, in the staff judge advocate's opinion, corrective action on the findings or sentence should be taken when an allegation of legal error is raised in matters submitted under R.C.M. 1105 or when otherwise deemed appropriate by the staff judge advocate."

docketing with this court (62 days beyond the standard).[10]  Appellant requests that we not approve the full reduction in rank to E-1.

Appellant does not assert any prejudice, and we find none.  Although Appellant does not assert any prejudice, we review Appellant's request for relief pursuant to *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002).  Under Article 66(c), UCMJ, this court is empowered "to grant relief for excessive post-trial delay without a showing of 'actual prejudice' within the meaning of Article 59(a), if it deems relief appropriate under the circumstances."  *Id.* at 224 (quoting *United States v. Collazo*, 53 M.J. 721, 727 (Army Ct. Crim. App. 2000)).  In *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006), our superior court held that a service court may grant relief even when the delay was not "most extraordinary."  The court held, "The essential inquiry remains appropriateness in light of all circumstances, and no single predicate criteria of 'most extraordinary' should be erected to foreclose application of Article 66(c), UCMJ, consideration or relief."  *Id.*

We find relief appropriate in this case.  In so doing, we considered the list of factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), with no single factor being dispositive.  These factors include the length and reasons for the delay, whether there is evidence of harm to Appellant or to the justice system caused by the delay, and whether there is evidence of institutional neglect in the post-trial processing.  *Id.*

The Government provided affidavits from a paralegal in charge of post-trial processing at the numbered air force and from a paralegal at the base legal office during the post-trial processing of this case.  These affidavits identified the time it took to complete the transcription and assembly of the record of trial as the primary reason for exceeding the trial-to-action standard.  In doing so, the affidavits provided a detailed account of this portion of the post-trial processing.

The 149 days from trial to action exceeded the standard by only 29 days.  This was a 921-page, 10-volume record of trial.  Considering the additional transcription and assembly time required for such a record, the court reporter requested additional court reporter assistance to expedite the transcription.  The Government also identified a two-week delay in serving the trial defense counsel with the record of trial prior to action as the trial defense counsel was deployed during the post-trial processing of this case.  The affidavits identified, with specificity, the time and effort of the Government to assemble and serve the record of trial on the Defense prior to action.  Under the circumstances of this case, a 149-day delay between the trial and the convening authority action was not so egregious, standing alone, to support sentence relief where there was no prejudice to Appellant.  *See, e.g.*, *United States v. Lister*, ACM 38543 (recon), unpub. op. at 6–7 (A.F.

---

[10] Although Appellant alleged two additional days of delay, this was apparently the result of Appellant erroneously counting both the last day of trial and the day of action, as well as both the date of action and the date the case was docketed.  *See United States v. Gray*, 74 M.J. 736 (A.F. Ct. Crim. App. 2015) (counting days for sentence to action, and for action to docketing); *United States v. Bischoff*, 74 M.J. 664 (A.F. Ct. Crim. App. 2015) (counting days from case docketed until opinion released).

Ct. Crim. App. 18 August 2015) (providing no relief for a 173-day delay to action where the record of trial was 810 pages); *United States v. Waite*, ACM 38357 (f rev), unpub. op. at 3–5 (A.F. Ct. Crim. App. 27 March 2015) (providing no relief for a 159-day delay where the time was attributable to a 1,017 page transcript and the assembling of a record of trial with 600 pages of exhibits and 300 pages of allied papers).

Most troubling, however, was the 92-day delay between action and docketing of this case. A delay between action and docketing is "the least defensible of all and worthy of the least patience." *United States v. Dunbar*, 31 M.J. 70, 73 (C.M.A. 1990). "[T]his stage involves no discretion or judgment; and, unlike an appellate court's consideration of an appeal, this stage involves no complex legal or factual issues or weighing of policy considerations." *Id.*

The affidavits submitted by the Government explained the delay between action and docketing as follows:

> The Action was signed on 21 July 2014. There was a discrepancy between which exhibits were ordered sealed in the transcript, which exhibits were listed as 'sealed' in the exhibit list and the actual exhibit documents that were sealed in the [record of trial]. It was a difficult issue to articulate to someone over the phone. There were multiple conversations between [the numbered air force legal office] and [the military justice division] regarding the way forward and multiple conversations with [the base legal office] on how to proceed. It took a long time to figure out if a certificate of correction was needed. When one was drafted, the base office was unable to contact the [Defense] to review the certificate of correction and the [military judge] would not sign it until the [Defense] had reviewed it. Finally, [the military justice division] directed the [court reporter] to listen to the recording to determine the [military judge's] intent and at that point the issue was corrected and the [record of trial] was mailed out shortly thereafter. The [record of trial] was forwarded to [the military justice division] on 29 September 2014.

Although we appreciate the apparent efforts to ensure the record of trial was accurate prior to forwarding it for appellate review, the Government has failed to identify with specificity why these efforts took more than two months. Although we acknowledge that efforts to ensure proper assembly of the record of trial could justify additional post-trial processing time beyond the 30-day standard, the Government in this case failed to sufficiently link their justification to the extent of delay that occurred. *Cf. United States v. Sutton*, ACM S32143, unpub. op. at 8–9 (A.F. Ct. Crim. App. 21 August 2014) (providing

*Tardif* relief for a 114-day delay between action and docketing, but recognizing that there might be valid reasons to explain action-to-docketing delay).

We find that there was significant delay that was not adequately explained by the Government. Considering that this delay followed a prior failure to meet the time standards for trial to action, we conclude that the delay in this case compromises the disciplinary effect of the military justice system as it relates to Appellant's sentence. Therefore, in exercising our broad authority under Article 66(c), UCMJ, we approve a sentence consisting of a bad-conduct discharge, forfeiture of $750 pay per month for 8 months, confinement for 21 days, and reduction to E-1.[11]

*Sealing of a Portion of the Record of Trial*

Appellant identifies pages 824–848 of Volume 7 of the record of trial as a closed hearing pursuant to Mil. R. Evid. 513 that should have been sealed. Appellant requests this court direct that portion of the record to be sealed. This was a closed hearing that involved a discussion of certain portions of Appellant's mental health records and whether the information contained in those records constituted appropriate rebuttal to a Defense submitted character letter from Appellant's mental health provider. From our review, we determined that only pages 829–832 discussed matters protected by Mil. R. Evid. 513 and should be sealed. The sealing of the other pages would not further the interests protected by Mil. R. Evid. 513.

Accordingly, the Clerk of the Court is directed to seal pages 829–832 in the original record of trial. The Government is also directed to remove these four pages from all other copies of the record of trial, as required by Air Force Manual 51-203, *Records of Trial*, ¶ 6.3.4 (27 June 2013).

*Conclusion*

The approved findings and the sentence, as reassessed, are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. § 859(a).[12]

---

[11] The convening authority's action erroneously approved total forfeitures of pay and allowances. This was error as Appellant was released from confinement at the time of action, and, as such, total forfeitures of all pay and allowances should not have been approved. R.C.M. 1107(d)(2), Discussion; Air Force Instruction 51-201, *Administration of Military Justice*, ¶ 9.26.1 (6 June 2013). The sentence, as reassessed, moots this error.

[12] Appellant noted that the court-martial order contains the following typographical errors: in Specification 4 of Charge I, "participant" is spelled "participate" and in Specification 13 of Charge I, "violate" is spelled "vilolate." We commend Appellate defense counsel for their attention to detail and the manner in which they brought this non-prejudicial typographical error to the attention of the court. We direct a corrected promulgating order to correct these minor errors.

Accordingly, the approved findings and the sentence, as reassessed, are **AFFIRMED**.[13]

FOR THE COURT

LEAH M. CALAHAN
Clerk of the Court

---

[13] In a memorandum dated 2 February 2015, Lieutenant General Christopher F. Burne, The Judge Advocate General of the Air Force, designated Senior Judge Martin T. Mitchell as the Chief Appellate Military Judge in cases where Chief Judge Mark L. Allred served as the military judge or recused himself under the governing standards of judicial conduct. In this case, Chief Judge Allred recused himself due to his prior involvement in this case. Therefore, Chief Judge Mitchell designated the panel in this case.